## COMMONWEALTH *vs.* KENNETH BUCK.

Barnstable.    December 4, 1933. — December 28, 1933.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Practice, Criminal,* Nolle prosequi, Exceptions. *District Attorney. Evidence,* Confession, Competency, Presumptions and burden of proof.

It is a common practice for a grand jury to hear evidence and to return an indictment charging a crime with respect to which a complaint in a district court already has been made, a warrant issued and an arrest made thereon; and, after the return of the indictment, the district attorney for the district where the crime was committed, the complaint made and the indictment found, has power to enter in the district court a *nolle prosequi* on the complaint, the effect of which is to cause its dismissal without trial; but the defendant is not thereby acquitted of the crime.

From the record presented to this court upon exceptions saved by one found guilty at the trial of an indictment charging kidnapping, the following appeared: The Commonwealth offered in evidence a statement by the defendant to police officers. Following an inquiry by the trial judge in the absence of the jury, the judge found that words spoken to the defendant by one of the officers destroyed the validity of the defendant's statement as a confession and that the portions of the statement following the speaking of such words by the officer were involuntary. Later in the trial, upon an inquiry by the judge in the absence of the jury respecting another statement made later by the defendant to the chief of police, the judge found as a fact that no promise nor inducement was made to the defendant to obtain the second statement, that any inducement which may have been present when the first statement was made had "lost its force," and that the second statement was voluntary; and ruled that the second statement was admissible. The chief of police then testified before the jury that, at the time the second statement was made by the defendant in his presence at a court house, a woman stenographer was present for the purpose of taking the statement, and that he had sent for her to do so; that thereafter she had the defendant sworn; that he, the witness, told the stenographer that the defendant was going to give a full and true confession without any promise or hope of reward, and without any compulsion or threat; that he said to the defendant in the stenographer's presence, "Is that so?" and the defendant said, "Yes"; that at the conclusion of the statement the defendant signed the stenographer's notebook; and that the stenographic notes were later transcribed and the defendant signed the written statement, which was introduced in evidence and offered as

an exhibit. *Held*, that no error was shown in the admission of the statement as a confession by the defendant.

All confessions *prima facie* are voluntary, and it is for the party objecting to their admission as evidence at the trial of an indictment to show as ground for such objection that they were made under such pressure of hope or fear as to raise a doubt of their accuracy.

A confession is not inadmissible as evidence at the trial of an indictment merely because the defendant was not warned that anything he might say might be used against him.

A defendant at the trial of an indictment was not harmed by a refusal by the trial judge to require the Commonwealth to introduce certain evidence known also to the defendant, where the judge stated to the defendant that he had no control over the introduction of evidence by the Commonwealth but that he would allow the defendant to introduce that evidence, and the defendant failed to do so.

An exception by the defendant at the trial of an indictment to the admission of certain evidence was not sustained where it appeared that the judge ordered the evidence struck from the record at the conclusion of the evidence and instructed the jury to disregard it entirely: it was to be assumed that the jury followed the instructions of the judge.

INDICTMENT, found and returned on May 18, 1933, and described in the opinion.

The indictment was tried before *Hanify*, J. Material evidence and exceptions saved by the defendant are described in the opinion. The defendant was found guilty and alleged exceptions.

*E. Burwick*, for the defendant.

*F. E. Smith*, Assistant District Attorney, (*W. C. Crossley*, District Attorney, with him,) for the Commonwealth.

CROSBY, J. The defendant was charged in two counts of an indictment with forcibly and secretly confining and imprisoning Margaret G. McMath, otherwise called Peggy G. McMath, with intent thereby to extort money from her father, Neil C. McMath. At the trial verdicts of guilty were returned on both counts of the indictment. The case is before this court upon certain exceptions saved by the defendant at the trial.

It is recited in the bill of exceptions that the defendant was arrested upon a complaint made to the Second District Court of Barnstable; that on May 8, 1933, he was arraigned upon a complaint issuing from that court which charged him with the offence of kidnapping; that the defendant

pleaded not guilty, and was committed to jail on default of
bail, and the case was continued until May 22; that be-
tween May 8 and May 22 the grand jury returned the in-
dictment hereinbefore referred to.   Upon the return of the
indictment the defendant was brought into the Superior
Court to plead to the indictment.   Before so pleading the
district attorney, subject to the defendant's objection, nol-
prossed the case pending in the District Court.   At the trial
and before the jury were empanelled, and before the de-
fendant pleaded to the indictment, he filed a motion to
quash the indictment on the ground that there was at that
time a complaint pending against him in the District Court
charging him with the same crime as set forth in the indict-
ment; that he had pleaded not guilty to the complaint and
was in jail awaiting trial on that complaint.   The motion
was denied subject to the defendant's exception.

G. L. (Ter. Ed.) c. 12, § 27, provides that "District at-
torneys within their respective districts shall appear for the
commonwealth in the superior court in all cases, criminal
or civil, in which the commonwealth is a party or interested,
and in the hearing, in the supreme judicial court, of all ques-
tions of law arising in the cases of which they respectively
have charge . . . ."   It is a common practice for the grand
jury to consider crimes, prosecution for which is pending in
district courts.   "It also has been the custom, in instances
where an indictment has been found for the same or a
graver offence, for the district court not to try the com-
plaint pending before it."   *Klous* v. *Judges of the Municipal
Court*, 251 Mass. 292, 295.   A district court has power to
order a complaint dismissed.   *Commonwealth* v. *Bressant*,
126 Mass. 246.   Although the statute (G. L. [Ter. Ed.] c. 12,
§ 27) expressly requires the attendance of the district attor-
ney in the courts of superior jurisdiction, his appearance in
district courts within his district is discretionary.   It is a
common practice for district attorneys to appear in district
courts in cases where persons are charged with the commis-
sion of serious crimes.   It is plain that the district attorney
had power to appear for the Commonwealth in the District
Court, and where as here the grand jury had returned an

indictment against the defendant for the same offence charged in the District Court he could enter a *nolle prosequi* of the complaint, the effect of which without trial would be like dismissing a complaint. The defendant is not acquitted of the crime charged against him; he is exempted from liability only on that complaint. *Commonwealth* v. *Gould*, 12 Gray, 171. *Commonwealth* v. *Bressant*, 126 Mass. 246, 247. The action of the district attorney in entering a *nolle prosequi* in the District Court after an indictment had been found discloses no error of law. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 572. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 18. We do not imply that if the *nolle prosequi* had not been entered properly the pendency of the complaint would have been a bar to the trial of the defendant on the indictment.

Following his arrest the defendant made two statements to the officers who were engaged in the investigation of the crime. The first was made in the court house in Barnstable, on May 6, and was offered at the trial as a confession of the defendant. The jury were excused upon objection of counsel for the defendant, and the testimony was offered through a witness as to the contents of a statement purported to be a confession of the defendant. At the conclusion of the preliminary hearing, the presiding judge ruled, in the absence of the jury, that statements made to the defendant by officer Barrett, who was present, destroyed the validity of the statement as a confession, and that the confession made after the words spoken to him by the officer was involuntary. The judge further ruled that he would admit all statements made by the defendant before the officer made the statements above referred to.

At a later time during the trial one Hall, the chief of police of Harwich, testified that he assisted in the investigation in company with State officers; that on May 9, 1933, he talked with Lawrence Buck, a brother of the defendant, as a result of which on the same day he afterwards talked with the defendant at the house of correction, in the presence of a brother and brother-in-law of the defendant. The Commonwealth then proposed to offer a statement made by the defendant to

the witness Hall, and others, which was transcribed by Gertrude Collins, a stenographer, and which the Commonwealth contended was a confession. The defendant objected to the introduction of the statement. The jury then retired and at the conclusion of the proffered testimony the judge ruled in the absence of the jury, after hearing the same witnesses and substantially the same testimony that was later heard by the jury, that the confession was voluntary, and found as a fact that no promise or inducement was made to the defendant to make this confession, and that any inducement that may have been present on May 6 when the former alleged confession was made had "lost its force." The judge further found that when the second confession was made to Hall relatives of the defendant were present, who had asked the witness Hall to come to Barnstable at the defendant's request, and that nothing appeared "which rendered the statement involuntary." The judge ruled that it was a voluntary confession; the defendant excepted. After the jury returned, the witness Hall further testified that, at the time the statement was made by the defendant in his presence at the court house in Barnstable, Gertrude Collins was present for the purpose of taking stenographically the defendant's statement, and that he had sent for her to do so. She was the assistant clerk of the Superior Court for Barnstable County. Thereafter she had the defendant sworn. The witness Hall further testified that he told Miss Collins the defendant was going to give a full and true confession without any promise or hope of reward, or without any compulsion or threat, and that he said to the defendant in Miss Collins's presence, "Is that so?" and the defendant said, "Yes." The statement was then taken in question and answer form by Miss Collins in the presence of sheriff Crocker, the defendant's brother and the defendant's brother-in-law. At the conclusion of the statement the defendant signed the stenographer's notebook. The stenographic notes were later transcribed and the defendant signed the written statement, which was introduced in evidence and offered as an exhibit. The defendant excepted to its admission. The statement contained the following and other

recitals after the defendant had been asked by the witness Hall to tell just what occurred from the beginning, "just how you planned this kidnapping, and just what took place, also any one that assisted you, — tell just what part they played in this case": On the afternoon of the day the girl was taken and carried away the defendant went up into the woods and blackened his face, and then went to South Chatham and made two telephone calls, one to the school to have the girl excused, stating it was her father calling, and the other to the McMath house asking them to leave the receiver off the hook for ten or fifteen minutes, saying it was a telephone lineman calling; he put a black cloth over the dashboard of his automobile; he then went to the school and the girl came out and got into the automobile; he told her he was going to hold her for a little while in a camp; he tied her legs, and blindfolded her; he told her to get on the back seat, and she lay down on the back seat and he spread an old robe over her; he took her to a little cranberry house and carried her out of the automobile and laid her down in this place and left her, and later took her to the cellar of an unoccupied house; he put handcuffs on her and her arms and legs were tied; she remained there a few days and while she was there he carried her food; later she was delivered to her father after $70,000 had been paid by him to the defendant; while she was under the house he stayed with her two nights; he told her if she made any noise kidnappers would get her, and that he was trying to get her home; his brother Cyril told him that the girl's father was doing this and was helping him (the defendant) and was deceiving the police; it was agreed that the girl's father was to pay $70,000 and he was to receive $10,000; later when the girl was delivered to her father he received $60,000 from McMath, $10,000 of which McMath put into his (the defendant's) pocket; he also received a package of $50,000, and his brother Cyril received $10,000. The $60,000 received by the defendant was afterwards found in his house and the $10,000 paid the defendant's brother Cyril was also recovered by the officers.

It is the contention of counsel for the defendant that the statements of officer Barrett to the defendant when the

first alleged confession was made had not been overcome when the second confession was made, and for that reason the latter was inadmissible. There is no evidence tending to show that any statements made by Barrett to the defendant were known to or considered by the jury, the judge having expressly limited the admission of statements made by the defendant on May 6 up to the time the officer testified. The exceptions recite that the case was submitted to the jury after the charge of the judge, to which the defendant took no exception, and his counsel stated that he was satisfied with it and desired no additions or corrections. It thus appears that the rights of the defendant were fully protected. The finding of the trial judge that the second confession was voluntary and that there was no promise or inducement to the defendant to make it was warranted by the evidence.

All confessions are *prima facie* voluntary, and it is for the party objecting to their admission as evidence to show that they were made under such pressure of hope or fear as to raise a doubt of their accuracy. *Commonwealth* v. *Sego,* 125 Mass. 210, 213. *Commonwealth* v. *Dascalakis,* 243 Mass. 519, 522. The confession was not inadmissible because the defendant was not warned that anything he might say might be used against him. *Commonwealth* v. *Szczepanek,* 235 Mass. 411, 414. *Commonwealth* v. *Jokinen,* 257 Mass. 429, 431. It is recited in the bill of exceptions that, as the case of the Commonwealth was about to close, counsel for the defendant stated to the judge that before the Commonwealth rested it should put in evidence the statements of officer Barrett to the defendant made on May 6 by virtue of which the judge excluded the statements of the defendant and what followed thereafter. The judge stated that he had no control over the introduction of evidence by the Commonwealth, but that he would allow the defendant to introduce that evidence; this the defendant failed to do. If that evidence was competent for any purpose, which we need not decide, the defendant was not harmed as he was permitted to introduce it if he so desired.

The defendant's testimony before the jury so far as it

related to the crime charged was substantially in accord
with his second confession and admitted substantially all
the allegations in the indictment except an intent to extort
money from the father of the girl. He testified that about
a month before May 2, 1933, he met a man in Hyannis,
who said his name was "Bill," with whom he had some
conversation; that this man told him he was an agent for
a gang of bootleggers who wanted him (the defendant) to
find a place where eight hundred cases of liquor could be
stored; that later this man called at the defendant's house
and told him he had a real job for him for which he could
make $10,000, "All . . . [he had] to do . . . [was] to
meet a girl at school and bring her to a place," he said the
place was some camp where she would be held for ransom,
and the defendant said if it was a kidnapping job "there
was nothing doing"; that "Bill" replied "This is not a
real kidnapping job," the girl was Margaret McMath and
her father knew all about it and it was all planned, and if
he got in any trouble McMath would get him out of it;
that the defendant told this man he wanted to think it
over, and then the man threatened his life and told him if
he told any one about it he would kill the defendant. Other
testimony of the defendant was to the effect that in what
he did in carrying the girl away and in securing the payment
of $70,000 for her return he acted under orders from the
man he described as "Bill" and that he, the defendant,
was to receive $10,000 of the ransom paid on the girl's re-
turn. The jury would have been warranted in finding that
this testimony was false, and was invented by the defend-
ant upon the mistaken belief that he would be exempted
from criminal responsibility for his unlawful acts. The
defendant's second confession, his testimony at the trial,
and the other evidence fully warranted a verdict of guilty
of the offence charged.

Gertrude Collins, a witness called by the Commonwealth,
testified that she was assistant clerk of the Superior Court
in Barnstable County, and on May 9, 1933, went to the jail
to take a statement from the defendant, and that she took

it stenographically; that before she started she administered an oath to the defendant and at the conclusion of the statement the defendant, at her request and in her presence, signed her book of original notes; that they were afterwards transcribed and she saw the defendant the next morning and gave him the transcribed notes and he read them in her presence. She was then asked, "What did you say to him?" The defendant's counsel objected to the question. The judge asked, "Did he reply?" The witness answered that he replied. The judge stated, "Then you may state what he said and what you said and what his reply was." To this conversation the defendant's counsel saved an exception. The witness stated: "At the end I said 'How could you do such a thing Kenneth?' And Kenneth said, 'I was desperate. I hadn't had a job for a year and I was desperate.' And I said to him, 'Why, if you had gotten by with that, there wouldn't be a child safe on Cape Cod.' And so far as I remember that was all the conversation." The question whether this statement of the witness was admissible as a confession of guilt of the defendant need not be determined as the judge ordered it struck from the record at the conclusion of the evidence and instructed the jury to disregard it entirely, because no reply was made thereto. It is to be assumed that the jury followed the instructions of the judge. The facts in *Ferris* v. *Ray Taxi Service Co.* 259 Mass. 401, cited by the defendant, distinguish it from the case at bar.

As no error of law appears in the conduct of the trial, the entry must be

*Exceptions overruled.*