STATE OF IOWA, Appellee, v. GEORGE WARNEKE, Appellant.

No. 42869.

1240

Earl R. Ferguson, for appellant.

Edward L. O'Connor, Attorney-general, Walter F. Maley, First Assistant Attorney-general, and G. W. Brown, County Attorney, for appellee.

Donegan, J.—The defendant, George Warneke, was indicted under an indictment charging him with the crime of robbery with aggravation. Upon the trial of the case he was found guilty of larceny from the person, and appeals.

Various errors are alleged as grounds for reversal. The most important of such alleged errors appears to be that in which it is claimed that the court erred in failing to instruct the jury in regard to included offenses. In its charge to the jury the court instructed them in regard to the included offenses of robbery and larceny from the person, but gave no instruction in regard to the offenses of grand or petty larceny, assault with intent to rob, assault, assault and battery, or assault with intent to inflict great bodily injury. Appellant contends that the failure to so instruct is reversible error.

The evidence shows that the alleged crime took place at the home of the defendant on August 9, 1934. Prior to that date the defendant's wife had commenced an action for divorce against him, but they were still living in the same house. The defendant's evidence tends to show that there was bad feeling between defendant and the prosecuting witness, and that defendant suspected the prosecuting witness of undue intimacy with defendant's wife. About 5:30 or 6 o'clock in the afternoon on the day of the alleged crime, John Bean, who is the prosecuting witness, a man named Bales, the

defendant's wife, her sister, a Mrs. Hill, and two children of Mrs. Hill, were in the kitchen of the defendant's home in Clarinda, when the defendant entered carrying a single-barreled shotgun. When he entered the kitchen, defendant either pointed the gun at Bales or placed the point of the barrel against Bales' ribs and told him to hold up his hands. Bales withdrew from his pocket a billfold in which there was no money, and the defendant took the billfold and threw it upon the table. The defendant then proceeded to where the prosecuting witness, Bean, was seated and said, "You are next, get them up," or something to that effect. Thereupon Bean seized the barrel of the gun, which immediately broke from the stock, and Bean and defendant began to fight. Both the defendant and Bales testified that when defendant approached Bales and told him to hold up his hands both of them were smiling and the matter appeared to be a joke, and there is nothing in the evidence at this point to indicate that, when the defendant left Bales and turned to Bean, any demand was made upon Bean for his money or other property. The evidence indicates that while the fight was going on between Bean and the defendant the other persons who were present left the premises, but it is undisputed that in this struggle Bean hit the defendant on the head with the barrel of the gun, inflicted a wound upon his forehead, and knocked him down. Defendant claims that after being knocked down he was unconscious, that after regaining consciousness he found the prosecuting witness standing upon the porch, that they both then washed up, and that there was no further trouble of any kind. The evidence of the prosecuting witness was, in substance, to the effect that after knocking the defendant down he immediately proceeded out to his automobile which was parked in the street, got into the automobile, turned the switch, pressed the starter, and was about to drive away, when the defendant came out of the house and called to his brother-in-law, one Hill, to come and help him; that thereupon they both came to the left side of Bean's automobile, that Hill struck him in the eye and the defendant reached in and turned off the ignition switch; that the defendant then went around to the right side of the car, reached in through the open window, struck him in the thigh with an open knife, and then reached in and took a billfold containing approximately $100 out of his pocket; and that, thereafter, both he and the defendant returned to the porch of the defendant's residence, where they proceeded to wash up. There is

evidence that there was considerable blood on the kitchen floor, that there was blood upon the cushion of the front seat of Bean's automobile, and that there was a trail of blood from the automobile to the porch of the defendant's residence. As above stated, the evidence of the defendant denies that there was ever any attempt to rob any one, denies that Bean's billfold or any of his money was ever taken, denies that the defendant ever went out to where the prosecuting witness was seated in his automobile, and denies that he at any time had any knife or used any knife upon the prosecuting witness. Bean testified that when the defendant approached him in the house he pointed the gun at him and said, "You are next, get them up." The evidence of the defendant is that when he approached Bean he neither pointed the gun at him nor said anything to him except to order him to get out of the house, and that thereupon Bean struck him and called him a vile name. No trace of either Bean's billfold, or of the money which he claims was in it, was ever found. Bean's claim that he had the money upon his person is corroborated to some extent by the evidence of his son and the son's housekeeper, who claim that he counted out something over $100 in their presence approximately two or three hours before the alleged crime was committed. Bean did not explain very definitely when or where he got this money, or how he happened to have that amount upon his person, his explanation being that he had put aside different amounts received by him at different times, and had kept the money thus accumulated in a can which was thrown in the weeds near his home.

The evidence being in substance as above stated, we do not think the court erred in not instructing the jury that they might find therefrom that the defendant was guilty of the crime of larceny, either grand or petty, because, if any property of the prosecuting witness was taken by the defendant, all the evidence is to the effect that it was taken as the result of an assault made upon him, and that it was taken from his person. State v. Reasby, 100 Iowa 231, 69 N. W. 451.

The indictment, however, was for the crime of robbery with aggravation, and alleged that the defendant, "George Warneke was armed with dangerous weapons, to wit: A shot gun and a knife, which the said George Warneke intended to use if resisted for the purpose of killing or maiming the said John Bean, and did strike the said John Bean with said shot gun, and attempt to shoot him, and did stab him with said knife." Under the charges of this in-

dictment, we think the evidence was such that, if the jury had been permitted by the instructions to do so, they could have found that no money or property was taken, but that the defendant had committed an assault with intent to rob, or a simple assault, or an assault and battery, or an assault with intent to inflict great bodily injury. The trial court submitted to the jury only the crime of robbery with aggravation, and the included crimes of robbery and larceny from the person. The jury found the defendant guilty of larceny from the person, the lowest degree of crime which was submitted to them. We do not have here a case similar to State v. Smith, 215 Iowa 374, 245 N. W. 309, where the ·jury was instructed as to different included offenses, and found the defendant guilty of a higher degree of the crime than one concerning which they had been instructed. Under the evidence in the instant case, we think that the jury could have found that the defendant did take money from the prosecuting witness' person, and that they might have convicted him of any one of the three offenses submitted to them. Under the evidence, however, we also think that the jury might have found that no money or property of the prosecuting witness was taken by the defendant, but that he was guilty of some one of the other offenses which the indictment alleged. In State v. Duffy, 124 Iowa 705, 706, 100 N. W. 796, 797, it is said:

"The jury was instructed as to larceny from the person and as to assault, but the indictment charges that the defendant struck and wounded the prosecutor, and it is therefore plain that the instruction as to the included crime of assault and battery should have been given.

"The court also failed to instruct as to the crime of assault with intent to rob. See Code, section 4770. This was a very important matter, however, and the jury might well have found, under the evidence, that there was an assault with intent to rob, but that no robbery was actually committed."

See, also, State v. Taylor, 140 Iowa 470, 118 N. W. 747; State v. Becker, 159 Iowa 72, 140 N. W. 201; State v. Buchan, 219 Iowa 106, 257 N. W. 586.

In failing to instruct the jury as to the other offenses of which he might have been found guilty under the evidence, we think the trial court committed reversible error.

1244

We have examined the other errors relied upon for reversal, and in our opinion they are without merit. For the reasons above stated, the judgment of the district court is reversed.—Reversed.

ANDERSON, C. J., and all Justices concur.