JAMES BAWDEN McCANDLESS, petitioner, v. DISTRICT COURT OF
POLK COUNTY, HONORABLE RUSSELL JORDAN, Judge,
respondent.

No. 48352.

(Reported in 61 N. W. 2d 674)

600

December 15, 1953.

Rehearing Denied March 12, 1954.

Prince & Guthrie, of Webster City, Dale L. Porter and Lehmann, Hurlburt, Blanchard & Cless, all of Des Moines, for petitioner.

Clyde E. Herring, County Attorney of Polk County, of Des Moines, for respondent.

Larson, J.—On the 3rd of August, 1952, petitioner, James Bawden McCandless, was arrested in Polk County, Iowa, and charged with operating a motor vehicle while intoxicated. He was bound over to the grand jury and released on a bond which was furnished by a relative with whom he resided near Webster City, Iowa. Petitioner's bond provided for his appearance at the next term of the District Court in and for Polk County "to be begun and held at Des Moines * * * on the 2d day of September, A. D. 1952," there and then to answer the charge against him. The grand jury returned an indictment against petitioner McCandless on the 10th of October, 1952, charging him with the crime of operating a motor vehicle while intoxicated, second offense. Warrant was issued for his arrest and said information communicated by radio to the office of the sheriff of Hamilton County, though there is no showing it was ever received by the sheriff. Nevertheless there was no reply from that officer, no

further action shown by the Polk County sheriff's office to obtain custody of the accused, and no attempt by the accused to depart from his usual abode. On April 23, 1953, defendant was called in open court, failed to answer, and his bond declared forfeited. Petitioner contends he had no knowledge of his indictment until a notice was served April 27, 1953, upon his bondsman. Hearing was set for the 11th of May, 1953, to show cause why judgment should not be entered on the bond. Petitioner and his counsel appeared in court on said date, the bond forfeiture was set aside, and the petitioner formally arraigned under the indictment. Thereupon petitioner filed a motion to dismiss the indictment, stating as grounds the provisions of sections 795.2 and 795.3, Code of Iowa, 1950. It appeared that the accused had lived in Des Moines and worked there within a few blocks of the courthouse most of the time from the latter part of September 1952 until the hearing, but had never inquired of the court or of court officials as to the status of his matter. He did visit at his home near Webster City frequently and said he kept in touch with his attorney there who was representing him in this and other matters. His attorney had written several letters to the Polk County Attorney regarding the charge, most of which pertained to the attorney's view that there was insufficient evidence for consideration or presentment to the grand jury. The last of these letters was dated September 2, 1952, and stated:

"With reference to the above case, we have had no further word from your office with reference to your intended disposition of the matter. In the event that the defendant is to be indicted, we will produce him for arraignment at your request on two days notice if that is agreeable with you. Inasmuch as the plea will be not guilty, we also request that in such event, the case be set for trial to a day certain in order that we may be on hand for trial."

The Polk County Attorney replied on September 4, 1952, as follows: "The OMVI charge against the above named defendant [James McCandless] has not yet been heard by the Polk County Grand Jury. Please be assured that I will keep you advised of whatever action the Grand Jury takes on this case."

Petitioner maintains that, as he had heard nothing through his attorney or otherwise, he had a right to assume that the matter had been dropped, though he had not inquired at the Polk County courthouse nor requested that his bond be exonerated.

The terms of the District Court in Polk County commenced on September 2, 1952, November 3, 1952, January 5, 1953, March 2, 1953, and May 4, 1953, and each term duly concluded without calling the accused for trial until April 23, 1953. The petit jury for the March term, 1953, was discharged on or about April 10, 1953. Thus there appears no dispute as to the passage of three terms of court between the time of petitioner's indictment and April 23, 1953, when his case was first called for trial.

In overruling petitioner's motion to dismiss the indictment against him, the respondent judge stated that he had very serious doubts if the statutes involved begin to run until after arraignment. He also held that there was shown "ample good excuse here" for not bringing petitioner to an earlier trial. Thereupon petitioner instituted this proceeding in certiorari to review the court's ruling.

██ ██ I. The statutory period is applicable whether the accused is arrested and arraigned or not. We discussed this matter in Hottle v. District Court, 233 Iowa 904, 11 N.W.2d 30, and held that while the court did not have jurisdiction over the person of the accused until he was served under the indictment, the court could on its own motion dismiss the indictment in a proper showing under these sections. We discussed there the contention of the state that, because the accused had never been arrested upon warrant issued under the indictment, he could not move to dismiss the indictment for the reason that the court does not obtain jurisdiction until the arrest, under the decision in State v. Judkins, 200 Iowa 1234, 206 N.W. 119. We further distinguished between that situation and cases involving a "speedy trial", and concluded while the rule in the Judkins case was correct, it did not apply to a motion to dismiss an indictment for failure to provide a speedy trial. We conclude, therefore, the motion to dismiss the indictment was proper under

the considered statutes regardless of whether or not there had been an arrest under the indictment.

II. As in a number of like appeals, we are again called upon for an interpretation and application of the constitutional guaranty of a speedy trial, as defined by the provisions of section 795.2 and section 795.3, Code of Iowa, 1950. Section 795.2 provides: "If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next regular term of the court in which the indictment is triable after the same is found, the court must order it to be dismissed, unless good cause to the contrary be shown."

Section 795.3 provides: "If the defendant be not indicted or tried as above provided, and sufficient reason therefor is shown, the court may order the prosecution continued from term to term, and discharge the defendant from custody on his own undertaking, or on the undertaking of bail for his appearance to answer the charge at the time to which the same is continued, but no continuance under this section shall be extended beyond the following three terms of the court."

The nature of the above quoted sections is a statutory definition of the term "speedy trial" as conceived by the particular legislature enacting it, with the purpose in mind of more effectively enforcing the constitutional guaranty. Pines v. District Court, 233 Iowa 1284, 10 N.W.2d 574.

These sections should be read together and are interpreted to mean that if "good cause" is shown the court may continue the case, but not beyond three terms of court (Davison v. Garfield, 219 Iowa 1258, 257 N.W. 432, 260 N.W. 667; Paul v. District Court, 231 Iowa 1027, 2 N.W.2d 751) unless accused waives in some manner his statutory and constitutional privilege of a speedy trial. Pines v. District Court, supra.

The rule in most jurisdictions now is clear. In order for an accused to enjoy the privilege of a "speedy trial", he must make a demand to the court for an early trial. If he fails to do so he waives not only the privilege provided by the constitution but the requirement of the statutes as well, and it is therefore unnecessary for the state to show "good cause" for the

delay. Thus we conclude the privilege afforded the accused for an early trial is considered waived when no demand is made to the court, and there can be no dismissal of the charge solely on the ground that "good cause" for the continuance was not shown by the state. It is only after the demand has been made to the court that the statutory provisions become effective and place the burden on the state to show "good cause" for a continuance. To this extent we now alter our holding in Davison v. Garfield, supra.

III. Petitioner complains bitterly that he was injured when he relied upon the promise of the Polk County Attorney that his lawyer would be kept "advised of whatever action the Grand Jury takes on this case." This may or may not be true. The petitioner and his counsel chose to rely upon the promise in the county attorney's letter. They were not compelled or authorized in law to do so. This transaction, nevertheless, is little more than petitioner's misplaced confidence or a failure of the county attorney to carry through on a courtesy he personally assumed. It cannot be held binding on the court or the state nor relieve the defendant from his promise in the bond filed in court guaranteeing his appearance. To hold otherwise would not appeal to reason, for the law does not confer upon the county attorney the right to dismiss any indictment without the court's approval. In an effort to punish the county attorney for his neglect it is unthinkable to provide such indirect authority in him at the expense of public safety and welfare. Furthermore, we have been cited no authority, nor have we been able to locate any, holding that under such circumstances a county attorney may relieve one accused from the obligations of his bond. The trial court held this an insufficient excuse for defendant's failure to appear in court as required by his bond, and we agree. In so deciding we do not offer an excuse for the failure of the Polk County officer for not keeping a promise to petitioner's counsel or for failing to use greater diligence in taking the petitioner into custody after the indictment. However, in the case of Pines v. District Court, supra, we held that the defendant was not relieved from his responsibility to appear in court to answer an indictment even though he was available

for arrest and was not arrested and brought before the court for that purpose nor pursuant to a bond forfeiture action.

It has been well said that the rights given the accused by the constitution and our statutes are shields, not weapons, and being so intended by the legislature, we must give meaning to that intent. If this is true, what must one do in order to use the shield? Must the state carry it for him? We think not.

In the case of People of State of New York v. Davis, 168 Misc. 511, 514, 5 N. Y. S.2d 411, 414, the court said: "* * * there is no obligation on the part of the district attorney to give the defendant notice of the particular day on which he proposes to move the case of the People against the defendant", and we find no statutory duty in Iowa that requires the county attorney to notify a defendant in default of his bond that he will act against him at any certain time. Such notices are from the court, not the county attorney, and so here the petitioner must rely solely on negotiations with the court in relation to any charge against him to avoid a waiver of the privilege of a "speedy trial."

Petitioner argues that the statutes involved herein set up a legislative policy of imposing upon the officers of the state the affirmative duty of speedy action to bring the accused to trial and that his inferred consent to delay is of no force, and that his failure to demand trial cannot be held a waiver of the constitutional right. It is true these statutes have a dual purpose and were also intended to eliminate delays in criminal cases by imposing upon officers, especially the courts, the affirmative duty to speed them, but the accused cannot absolve himself of his responsibility for the delay unless he appeals to the *court*, especially in cases where the matter is not yet before the court. Where the defendant is on bail and does not appear in court demanding trial, he has little reason to complain of the delay. Meadowcroft v. People, 163 Ill. 56, 45 N.E. 991, 35 L. R. A. 176, 54 Am. St. Rep. 447. He is not under the oppression of the government which the provisions were designed to prevent.

IV. It is the general rule, now well established, that if acts or omissions of the accused are the cause of or a contributing factor in the delay which passes the trial over the second

or subsequent term, he should not be entitled to a dismissal. Such acts, or failure to act when one is bound to do so, may give rise to an agreed postponement, or to a waiver of those constitutional and statutory provisions herein considered. Pines v. District Court, supra.

█ The purpose of section 795.2 and section 795.3 and the provisions in section 10 of Article I of the Iowa Constitution as well as the Sixth Amendment to the Constitution of the United States, we have repeatedly said, were to relieve one accused of *the hardship of indefinite incarceration, or the anxiety of suspended prosecution if at liberty on bail,* and to require the courts and peace officers to proceed in the trial of criminal charges with such reasonable promptness as proper administration of justice demands. We discussed fully this object of establishing definiteness in the term "speedy trial" by enacting statutes such as those herein involved in the case of Pines v. District Court, supra, and shall not burden this opinion with a restatement of them now.

Most other jurisdictions agree with our Iowa rule. In Hembree v. Howell, 90 Okla. Cr. 371, 214 P.2d 458, the court held that where the defendant is on bail, the presumption is that delay in trial is caused by or with his consent, and the record must *affirmatively* show that he demanded trial or resisted continuance, but if he is not on bail the law makes demand for him, and prosecution has the burden of showing lawful cause for delay, citing State ex rel. Davis v. Bayless, 38 Okla. Cr. 129, 259 P. 606. See Hottle v. District Court, 233 Iowa 904, 11 N.W.2d 30.

The Minnesota court, in passing on matters similar, said in State v. McTague, 173 Minn. 153, 155, 216 N.W. 787, 788: "The right to a speedy trial is valuable. * * * It is a privilege to the accused. If he does not claim it, he should not complain. It may be waived. The statute is a means of enforcing the constitutional provision. The spirit of the law is that the accused must go *on record* in the attitude of demanding a trial or resisting delay. If he does not do this he must be held, in law, to have waived the privilege. Until he has so acted the state is not called upon to establish the existence of the statutory 'good cause.' " (Italics ours.)

608

We quoted from this decision with favor in Pines v. District Court, supra. We also held in State v. Rowley, 198 Iowa 613, 615, 198 N.W. 37, 38, 199 N.W. 369, that the provisions of our statute herein considered are for the benefit of an accused person who claims its protection. We said therein: "It may be waived by him."

In People v. Foster, 261 Mich. 247, 250, 246 N.W. 60, 61, the court held that the *proper method of making demand for speedy trial is by motion filed in the cause or made in open court*, and when the defendants are out on bail they waive the constitutional right to a speedy trial by not demanding it. It further held: "The demands, whatever their character, made on the circuit judge at chambers and on the prosecuting officers, were not sufficient. * * * The rights of defendants are for determination and protection of the *court*. The demand must be made to the *court*." (Italics ours.) Here also the duty of the petitioner was to appeal to the court, and it is not sufficient to show a demand on the county attorney or to rely upon such communication in lieu of his duty to appear in court as required by his bond. The requirement under our statute is that one so charged, or his counsel, must appear in court or file a formal demand or request for an early trial, and such a request or demand to any other officer will not suffice. We must here construe the petitioner's failure to so act amounted to a waiver on his part that indicated no desire, interest in, or willingness to secure an early disposition of the charge against him, the anxious inquiry of his counsel *prior* to the submission of the matter to the grand jury notwithstanding.

We have already established in the case of Pines v. District Court, supra, that it will take but little more in the nature of surrounding circumstances to constitute a waiver of any right to a dismissal under these sections, for there the court said at page 1301 of 233 Iowa, page 583 of 10 N.W.2d: "It is our conclusion that the petitioner, not having resisted postponement, nor demanded a trial, nor made any effort to bring his case on for trial, waived any right to a dismissal under the provisions of section 14024" (now 795.2). The facts herein, we believe, justify the finding by the trial court that the accused agreed

to the postponement, or that the accused waived his right to a dismissal under the statutes. The court's refusal to dismiss under the requirement of the statutes here involved was within its discretion and was correct.

We can see no sufficient or valid reason for petitioner's failure, after the close of the September term of court on or about November 3, 1952, to appear in court to answer or be relieved of his bond obligation. In this failure he was at fault. Petitioner's duty to appear as required by his bond was not relieved by the county attorney's communication. We are unable, therefore, to accept petitioner's excuse for not presenting himself to the court, or at least renewing his inquiry after the September term of court had expired. His strange silence after receiving the county attorney's letter early in September is not convincing that he desired or had an interest in a speedy disposition of the pending charge against him. The most plausible indication of his desire was that petitioner was agreeable to the indefinite postponement of any action against him.

Petitioner complained further that he pleaded guilty to a like charge in Harding County, relying on an assumed dismissal of this charge, and would be further prejudiced in now being forced to face the Polk County indictment. The court however ordered no change in the charge in the case at bar, so that the accused will not be required to face a charge of operating a motor vehicle while intoxicated, third offense. We feel this was fair and was a sufficient concession to defendant for his reliance on the county attorney's promise.

The Kansas court in Ex parte Van Garner, 134 Kan. 410, 412, 5 P.2d 821, 822, said: "But it does not follow that the petitioners are to go scot free without answering to justice for their alleged crimes because the provision of the crime code intended to secure them a speedy trial was not complied with. Ever since their arrest these petitioners were represented by counsel. * * * They were quite content to let the term go by without calling the *court's attention* to their statutory right of trial at that term." (Italics ours.)

The federal decisions are in accord, for in Pietch v. United States, 10 Cir., Okla., 110 F.2d 817, 819, 129 A. L. R. 563, 567,

certiorari denied, 310 U. S. 648, 60 S. Ct. 1100, 84 L. Ed. 1414, the court said: "A person charged with a crime cannot assert with success that his right to a speedy trial guaranteed by the Sixth Amendment to the Constitution of the United States has been invaded unless he asked for a trial. In the absence of an affirmative request or demand for trial made *to the court* it must be presumed that appellant acquiesced in the delay and therefore cannot complain", citing cases. (Italics ours.)

That this is the general rule in most jurisdictions there can be no doubt. For a list of cases in various states, see Pines v. District Court, supra, 233 Iowa 1284, at 1299, 10 N.W.2d 574.

In the case of State v. McTague, supra, 173 Minn. 153, 154, 216 N.W. 787, 788, the court said: "The constitutional and statutory provisions for a speedy trial are for the protection of the defendant, but that does not mean that the state is the only one that may initiate action. There is really no reason for the courts to free an accused simply because a dilatory prosecutor has 'gone to sleep at the switch' * * * while the defendant and his counsel rest in silence."

The accused must act in some way to assert his right to an immediate trial, and if he fails to call the court's attention to his demand, this failure will justify a finding by the court that he waives the privilege of a speedy trial. This is the meaning of our statutes and the purpose of the constitutional provision. Logic does not demand that we reward one charged with a crime for the mere neglect of an officer, nor that we punish the state and society for that same failure of an officer, unless the accused in some way absolves himself from fault by at least calling the court's attention to the matter. We are content to say that the spirit of the laws herein referred to is that the accused must go on record in the attitude of demanding a trial or resisting delay, and such record and attitude must be expressed to the *court*. If this is not done, he is held to have waived the privilege of a speedy trial as defined in the sections herein discussed, and the state is not therefore called upon to prove good cause for a continuance.

Having found no abuse of the trial court's discretion in holding that there was a sufficient showing to constitute an

agreed postponement, "good cause" for the delay, and waiver, the writ of certiorari is therefore annulled.—Writ annulled.

GARFIELD, WENNERSTRUM, MULRONEY, and SMITH, JJ., concur.

THOMPSON, J., dissents.

HAYS, C. J., and BLISS and OLIVER, JJ., join in the dissent.

THOMPSON, J. (dissenting)—The sole proposition by which the county attorney of Polk County, as attorney for the respondent, attempts to support the trial court's holding is thus stated, under the heading of "Proposition Relied on for Annulling the Writ: Section 795.2, Code of Iowa, 1950, does not run until after there is an arraignment and plea of Defendant." The trial court, in overruling defendant's motion to dismiss, said: "In this case, it appears to the court that it would be unconscionable to sustain the Motion. Therefore, the motion is overruled. It seems that there is ample good excuse here, and I have very serious doubts if this statute begins to run until after there has been an arraignment."

The first, and apparently the major, ground upon which the court acted, that it would be "unconscionable" to grant the motion, of course means nothing. It is not argued; nor is there any claim now made that the state showed "ample good excuse", or any excuse, for its long failure to go forward with the prosecution. The sole proposition set out by the county attorney is quoted above. The majority opinion, following Hottle v. District Court, 233 Iowa 904, 11 N.W.2d 30, properly holds the statutory period begins to run from the time of finding the indictment; arraignment is not necessary to start it. But the majority finds another ground, not relied upon by the trial court, not listed as a proposition for affirmance by respondent, for upholding the ruling made below.

I. We have held in Pines v. District Court, 233 Iowa 1284, 10 N.W.2d 574, it is incumbent upon the defendant to demand a trial before he can claim the rights accorded him by sections 795.2 and 795.3 of the present Code, and of section 10 of Article

I of the Constitution of the State of Iowa. If he does not demand a trial he is deemed to have waived them. The question before us here then becomes a narrow one. It is this: Is a promise by the county attorney to advise defendant, through his counsel, whether an indictment has been returned, something upon which the accused may rely? It is evident a defendant cannot demand a trial until he knows he has been charged with the commission of a crime.

It is apparent this case goes beyond anything we have approved to date, in Pines v. District Court, supra, and other cases. Conceding demand is necessary, the majority now enters into the field of determining where and how the demand must be made. It sets out the correspondence between Mr. Clyde E. Herring, county attorney of Polk County, and petitioner's attorney. The letter from Mr. Guthrie, under date of September 2, 1952, after referring to previous correspondence, says if the defendant should be indicted, "we will produce him for arraignment at your request on two days notice if that is agreeable to you. Inasmuch as the plea will be not guilty, we also request that in such event, the case be set for trial to a day certain in order that we may be on hand for trial." On September 4 Mr. Herring replied, saying the case had not come before the grand jury; and, "Please be assured that I will keep you advised of whatever action the Grand Jury takes on this case."

While the majority does not stress the point, it is evident a demand for trial in case an indictment were returned was made by petitioner's counsel. The majority says such demand must be made by formal motion in open court. With this highly technical interpretation of a defendant's right to a speedy trial under our constitution and statutes I am unable to agree, although I do not consider it the controlling question in the case.

It is implicit the majority holds the petitioner had no right to rely on the assurance of the county attorney that he would notify counsel if an indictment were returned. The appearance bond required by section 763.4, Code of 1950, when a defendant is held to answer to the district court, contains this provision:

"We, * * * hereby undertake that the said * * * [defendant] shall appear at the district court of the county of ....................,

at the next term thereof, and answer said charge, and submit to the orders and judgment of said court * * *."

From this it is the apparent thought of the majority that the defendant, petitioner herein, was bound to appear at the next term and discover for himself what had happened.

He was held to the grand jury after hearing before a magistrate, on August 13, 1952. The next term of the district court of Polk County commenced on September 2, but the grand jury did not return an indictment until October 10. If the majority is correct, it was the petitioner's duty to be at the courthouse in Des Moines each day from September 2 until October 10, or such later time as the convenience of the grand jury might determine, ready to "answer the charge and submit to the orders and judgment of the court." He had no control over the time when his case would be acted upon by the grand jury, and of course no means of knowing when it might be. It is understandable why his counsel tried to avoid this waste of time and motion, and it was a courtesy commonly rendered for the county attorney to promise to co-operate. Yet the majority says he had no right to rely upon the written promise of the prosecutor, but must hold to the letter of his bond. If there had been no charge pending against him, and the grand jury, as it often does, had returned an indictment or a true information had been filed, of which he had been given no notice for the time which elapsed here, I doubt even the majority would say he was bound to make a demand for trial in order to preserve his constitutional and statutory rights. But the situation as it actually exists is no different unless the county attorney had no right or authority to make the promise he did. If he had such right or authority, it follows the petitioner was entitled to rely upon it; and so long as he did so rely he surely could not be said to have waived his rights by failure to make a demand for trial.

Turning upon the same point is the added holding of the majority that a demand for trial must be formally made in open court. A demand for trial, if an indictment were returned, was contained in the letter from Mr. Guthrie to Mr. Herring under date of September 2. It was in reply to this letter Mr. Herring wrote, on September 4, "Please be assured that I will

keep you advised of whatever action the Grand Jury takes on this case."

We need not speculate upon the reasons why Mr. Herring failed to keep his word. Very likely his promise was forgotten in the press of other affairs. Apparently he did not recall it even when his office started on the following April, six months later, to forfeit petitioner's appearance bond. In any event, the arrangement was of a type often made by lawyers both in criminal and civil cases. In fact, it would be intolerable if they could not in good faith enter into such agreements. When the majority hold such arrangements are not binding and all dealings must be at arm's length by formal procedure in open court, they are shutting their eyes to the realities of the practice of law and imposing a heavy additional burden upon litigants. It is usual practice for counsel to agree as to times for trial and upon a multitude of details which save time and expense for all concerned. No good reason is suggested why this should not be done, or why there was anything wrong with the plan agreed to by Mr. Guthrie and Mr. Herring here. If it was proper—and there are few experienced practicing lawyers who will say it was not—then petitioner and his counsel had a right to rely upon it. It follows petitioner had no notice, and was bound to take no notice, of the indictment against him until the proceeding to forfeit his bond was commenced over six months and three terms of court later.

II. The authority of prosecuting attorneys in handling criminal cases has been passed upon by the courts many times. The duties of county attorneys are prescribed by section 336.2 of the 1950 Code. The general rule as to the authority of the prosecutor in criminal cases is laid down in 27 C. J. S., District and Prosecuting Attorneys, section 14, pages 403, 404:

"Generally speaking, the prosecuting attorney is charged with the duty of determining when to commence a particular prosecution and when to discontinue it, and has control of criminal proceedings in the trial court. While a case is under the control of the prosecuting attorney any agreement he may make with reference to the disposition thereof is binding so far as it is proper and legal * * *."

We have ourselves said in an early case: "While the case is in the District Court, it is without doubt, under the control of the District Attorney. Any agreement he may make with reference to the disposition of the cause, so far as it is proper, or within the limits of the law, should be regarded as binding." State v. Fleming, 13 Iowa 443, 444.

The Montana Supreme Court has said: "The county attorney in this state, not only directs under what conditions a criminal action shall be commenced, but from the time it begins until it ends his supervision and control is complete, limited only by such restrictions as the law imposes." Halladay v. State Bank of Fairfield, 66 Mont. 111, 118, 212 P. 861, 863.

In Laughlin v. Clawson, 27 Pa. 328, 330, the Pennsylvania Supreme Court used this language: "If such officers [of the state] make a mistake, it is an error of government itself, and government cannot allow the citizen to suffer for his trust in its proper functionaries."

From Coster v. State, 16 Ala. App. 191, 76 So. 475, is this: "While the relation of attorney and client does not exist between the solicitor and the state, his solemn admissions in the progress of the trial of a case are nevertheless binding upon the state."

Many authorities exemplify the extent to which the prosecuting attorney may bind the state. In Commonwealth v. Ragone, 317 Pa. 113, 118, 176 A. 454, 456, the prosecuting attorney had agreed a verdict of not guilty by reason of insanity might be directed. The trial court refused to so direct, but submitted the case to a jury which found defendant guilty. The Pennsylvania Supreme Court reversed saying: "That the district attorney acted within the scope of his official authority in committing the Commonwealth to the proposition that the defendant was insane is nowhere challenged. Such a challenge could not be sustained, in the absence of any proof or imputation of bad faith or improper conduct on the part of the Commonwealth's representative."

It is said the county attorney is charged both in criminal and civil cases with the exercise of judgment and discretion, and is presumed to use sound judgment in carrying out his grave

responsibilities. State ex rel. Ilvedson v. District Court, 70 N. D. 17, 291 N.W. 620.

At page 5, 1940 Opinions of the Attorney General of Iowa, is laid down the rule that section 336.2 vests in the county attorney a broad discretion as to the manner and means by which the laws of the state are to be enforced. Southard v. People, 69 Colo. 516, 518, 195 P. 102, 103, was a case involving the right of a district attorney to agree to a continuance. He had not carried out the agreement. The Colorado Supreme Court said: "The bail in the instant case had the right to assume that the district attorney would carry out his agreement to move for or consent to a continuance, and had good cause to believe that the case would be continued. He relied on the agreement, apparently in good faith." It was held the answer setting· up the agreement of the district attorney pleaded a good defense.

The general authority and duty of an attorney is discussed in State ex rel. Commissioners of Land Office v. Jones, 198 Okla. 187, 190, 176 P.2d 992, 996, 174 A. L. R. 1. After pointing out that attorneys are officers of the court, the Oklahoma Supreme Court said: " '* * * if the court or an officer of the court * * * have misled parties as to the time cases will be tried, the absence of such parties will be excused.' " This was a civil case, but under the general rules above-cited as to the right and authority of the public prosecutor in conducting criminal cases it is equally appropriate.

The majority pays little attention to the question of the extent to which the prosecutor may bind the state by preliminary agreements such as was made here. It prefers to pass off the promise of the county attorney of Polk County to notify petitioner's counsel if an indictment should be returned with the statement that "this transaction, nevertheless, is little more than petitioner's misplaced confidence or a failure of the county attorney to carry through on a courtesy he personally assumed." I agree it was a case of misplaced confidence, but I cannot so readily concur in the thought it was a mere courtesy which Mr. Herring could continue or abandon at his will, without any effect upon the petitioner's rights. He was appealed to in his official capacity to advise if an indictment should be returned,

and asked to set the case for trial if it were. He agreed to keep petitioner's counsel informed, and, for a reason not disclosed in the record, paid no more attention to his promise. No authority is cited by the majority which holds he could not bind the state by this simple agreement, which in no manner affected the merits or substantial issues of the case. There is none.

The majority, again with no citation of authority, lays down the rule that "the law does not confer upon the county attorney the right to dismiss any indictment without the court's approval." While absence of right to dismiss an indictment is a far cry from absence of the right to make an agreement to advise a defendant if an indictment is returned, I think the majority is on debatable ground in making the statement quoted. The general rule is to the contrary. "The weight of authority is to the effect that in the absence of a statute on the subject, the entering of a nolle prosequi before the jury has been impaneled and sworn lies in the sole discretion of the prosecuting officer." 14 Am. Jur., Criminal Law, section 296, page 967. In Commonwealth v. Buck, 285 Mass. 41, 188 N.E. 613, 614, the prosecuting attorney had entered a dismissal of a complaint pending in district court. It was urged he had no right to do so, but the Massachusetts Supreme Court held the matter was in his charge and the case was properly nolle prossed, in his discretion. This case was cited and approved by us in State v. Veterans of Foreign Wars, 223 Iowa 1146, 1149, 274 N.W. 916, 917, 112 A.L.R. 383, although the exact point under consideration here was not there present.

The question was squarely before the Kansas Supreme Court in State v. Finch, 128 Kan. 665, 280 P. 910, 915, 66 A. L. R. 1369. There an informer had advised the attorney general of Kansas of the whereabouts of a liquor still, as a result of which a raid was made and one Brown arrested, accused and pleaded guilty. Brown thereupon advised the county attorney of Shawnee County that Finch, the informer, was in partnership with him in the operation of the still. The county attorney proceeded to prosecute Finch. The attorney general, who had promised Finch in return for his information he would be immune to prosecution, appeared in the case and moved to dismiss. The

court denied the motion and Finch was convicted. The supreme court held the attorney general, as the superior prosecutor, had the unqualified right to dismiss the case. The conviction was reversed with instructions to dismiss. To the same effect is Foley v. Ham, 102 Kan. 66, 169 P. 183, 185, L. R. A. 1918C 204. If we are to join the minority which holds a charge may not be dismissed without the consent of the court, we should do it in a considered opinion when the point is raised, and not by casual dictum. I have pointed out it is not necessary to uphold the right of the prosecutor to dismiss an indictment to sustain the validity of what the county attorney did here.

Cases cited by the majority holding it is not required that the prosecutor give defendant notice of an indictment or of a date set for trial are of course not in point; he did agree to give such notice here, he was within his authority in so doing, and if he was, then the petitioner was equally within his right in relying on the promise. If the question is asked how this affects the duty of the petitioner to make demand for trial, the answer is obvious. Depending upon the written assurance of the county attorney he would be advised if an indictment were returned, he had no knowledge that it had been, and he would not be expected, even by the majority, I apprehend, to make a demand for trial without knowledge there was anything to try. Mr. Herring in effect said to him: "I will advise you if an indictment is returned." He did not advise; the petitioner had every right to assume there was no indictment. The prosecutor could have said to Mr. Guthrie, "Your bond requires you to appear at the next term and obey the judgments of the court; I shall expect you to do so, and I make you no promise." But, in common courtesy and following a practice long established among lawyers for the convenience of themselves and their clients, Mr. Herring agreed to advise. It was a matter of the smallest effort to him and would enable all parties to know if and when the trial was to be had and to arrange their affairs accordingly.

The majority goes to some length in citing cases which agree with Pines v. District Court, supra, in holding that ordinarily a demand is necessary before a defendant charged with

a crime may complain of failure to have a speedy trial. Of course none of these in any way touch our situation here, where the petitioner, because of the agreement of the prosecuting attorney, had no knowledge he was under indictment. This applies as well to People v. Foster, 261 Mich. 247, 246 N.W. 60, where it was held, without citation of authority or any discussion or reasoning, that a demand for trial made upon the prosecuting attorney or upon the court in chambers was not sufficient. I should much dislike to follow this case, even if it were in point. The county attorney is an officer of the court and in charge of prosecutions, and it should not be necessary for an accused to file a formal demand in order to assert his rights. How, in such case, is a defendant unable to employ counsel to proceed? But in any event the case does not reach the point we have here: Was the county attorney within his authority in making the agreement he did, and was the petitioner entitled to rely upon it? If these are answered in the affirmative, as they should be, we have the picture of a defendant who has been promised by the very public official in charge of his prosecution that he will be advised if an indictment is returned, and who more than six months later finds the promise has not been kept, being penalized for having "waived" his right to a speedy trial. The majority speaks of his "strange silence." This statement can be explained only by the thought he should not have relied upon the prosecutor's written assurance. There is nothing in the record otherwise to show why there was anything "strange" in waiting for the promised word.

I should not and shall not close this dissent without giving attention to the statement of the majority: "Logic does not demand that we reward one charged with a crime for the mere neglect of an officer, nor that we punish the state and society for that same failure of an officer, unless the accused in some way absolves himself from fault by at least calling the court's attention to the matter." This is to say no mistake, no inadvertence, no incompetence, no failure to keep his agreement by a prosecuting attorney should be taken advantage of by an accused, nor should he ever go free because of such failures; but he himself must call them to the attention of the court. The

reasoning would apply equally to the failure of the prosecutor to object to improper defense questions, or to offer evidence available which might aid the state's case, or to list witnesses valuable to the state upon the indictment or information, to object to improper conduct of defense counsel. It would apply to a fatal mistake in drawing an indictment or information, or to any one of a hundred other negligences or indifferences of prosecuting officials in performing their duties. The reasoning of the majority quite evidently is that the accused is presumed guilty, and we shall recognize no mistake or failure of the county attorney to honor his agreements which permit a defendant to go free, his constitutional and legal rights to the contrary notwithstanding. I think the petitioner was entitled to those rights.

It is suggested there is no showing petitioner was prejudiced by the delay. We held in Pines v. District Court, supra, that an accused is entitled to the protection of the constitution and of the implementing statutes whether he is held in jail or is free on bond, and we there quoted with approval from State v. Keefe, 17 Wyo. 227, 98 P. 122, 22 L. R. A., N.S., 896, 17 Ann. Cas. 161, to the same effect. There are many ways in which one at large upon bail may be prejudiced by failure to have a speedy trial. He is under mental strain and harassment; he is under public suspicion while the charge is pending; his witnesses or other evidence may be lost or procurement be made impossible or more difficult; he may be prevented from arranging his affairs as he otherwise would. An even better answer to this contention lies in the rule prejudice is presumed unless the record affirmatively shows to the contrary. In re Estate of Hoyt, 180 Iowa 1250, 1256, 163 N.W. 430, and many other cases lay down this well-recognized principle. Perhaps the conclusive answer, however, is that the petitioner is asking for a right given him by the constitution and the statutes of Iowa. The framers of the constitution and the legislature which enacted the statutes sought to remedy or prevent a recognized evil in the administration of the criminal law. The petitioner has been denied the right granted him; the mischief which the constitution and the statutes were aimed to eliminate clearly appears.

Prejudice arises on the face of the record from the denial of the protection of the constitution and statutes. The litigant who relies upon the statute of limitations is not required to show that he has been prejudiced by the undue delay, and the same reasoning applies here. We have gone as far as we should in restricting the application of the law in these situations; we should not take the further step of holding the accused may not rely upon the agreement of the county attorney to advise him if an indictment is returned.

By way of summary, it is my belief the rule that a defendant must make demand for trial before being permitted to claim his constitutional and legal rights to a prompt trial does not—in fact cannot—apply until he knows he is charged. Further, the fact he has furnished an appearance bond which specifies he shall appear at the next term of the district court is not material when the state, through its duly elected prosecuting attorney acting within the scope of his authority, has agreed to advise him if he is indicted. It was the state which waived its rights here. It was clearly within the power of the county attorney to make this agreement. The petitioner had a right to rely upon it, and to believe he had not been indicted because he was not so informed by the prosecutor. The only escape from this conclusion is either by holding the county attorney had no right to agree as he did, which would be contrary to all authority and reason; or that the petitioner should have known better than to rely upon a mere giving of his word which Mr. Herring was not bound to, and did not, honor. I doubt Mr. Herring himself would agree with this implication of the majority opinion, nor do I. If the county attorney had the right and power to make the promise the petitioner had the right to rely upon it. Relying on it, he had no duty to make a demand for trial until he knew an indictment was returned.

I would sustain the writ.

HAYS, C. J., and BLISS and OLIVER, JJ., join in this dissent.