STATE OF IOWA, appellee, v. JOE UNDERWOOD, appellant.

No. 49005.

(Reported in 80 N.W.2d 730)

444

FEBRUARY 5, 1957.

Thomas O. Tacy, of Council Bluffs, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak and Dudley C. Lowry, Assistant Attorneys General, and Matt Walsh, County Attorney, for appellee.

LARSON, J.—The defendant, Joe Underwood, was indicted and charged with the crime of breaking and entering the warehouse of the Younkerman Seed Company in Council Bluffs, Iowa, during the night of November 11, 1955. He, together with Robert Reid, Jerry Porter and two other lads, had been engaged in a beer drinking party which was broken up by police officers around midnight, and the two lads had gone home. Underwood, Reid and Porter had continued to drive about the city. After the break-in was discovered, police observed them in that locality and gave chase. Porter and the defendant got away. Reid was caught and taken to the police station, where a statement was obtained from him. The defendant was later arrested and tried before a jury, which found him guilty. He was sentenced to serve ten years in the State Men's Reformatory. In the trial the State called as its witnesses Reid and Porter,

and it is in relation to their testimony and the county attorney's comments thereon in his final argument to the jury that defendant contends prejudicial error occurred.

The witness Reid, who appeared to be much less than co-operative, gave the following testimony on direct examination:

"Q. Were you charged with breaking and entering the Younkerman Seed Company? A. Yes.

"MR. TACY (defense counsel): Just a moment. That is incompetent, irrelevant and immaterial.

"THE COURT: Well, he has answered it. (Defendant excepts.)

"Q. Did you enter a plea to that charge?

"MR. TACY: Just a moment. It's incompetent, irrelevant and immaterial.

"THE COURT: Overruled. (Defendant excepts.)

"A. Yes."

Defendant contends that such testimony was not admissible and, as later used, was highly prejudicial. He contends it was not admissible against him, for it was of no probative value in determining his guilt or innocence of the offense charged whether or not an alleged accomplice entered a plea of guilty for the same crime. We agree. It is hard to see wherein such testimony has probative value in determining the guilt or innocence of the defendant. It does not, except perhaps by an improper inference, tend to prove defendant's guilt by establishing the fact that another, although an alleged accomplice, entered a plea of guilty to the same crime. This was not an interrogation as to the witness's acts at the time in question.

I. Evidence of the plea of guilty of one alleged accomplice is not admissible to prove the guilt of another charged with and on trial for the same offense. State v. Huss, 210 Iowa 1317, 232 N.W. 692; State v. Abley, 109 Iowa 61, 80 N.W. 225, 46 L. R. A. 862, 77 Am. St. Rep. 520; State v. Concord, 172 Iowa 467, 154 N.W. 763; People v. Buford, 396 Ill. 158, 71 N.E.2d 340; State v. Johnson, 152 Iowa 675, 133 N.W. 115. Except for the purpose of impeachment of the witness, it is also improper to examine him as to his prior conviction of any felony. Section 622.17, Code of Iowa, 1954. Evidence relating

to a prior conviction of a felony is not to be considered by the jury as evidence tending to connect the defendant with the commission of the offense charged, nor for the purpose of establishing his guilt, but may be used only for the purpose of testing the credibility of the witness. State v. Johnson, supra. Any other implication is improper.

In discussing the impropriety of such implications of guilt in the case of State v. Huss, supra, 210 Iowa 1317, 1319, 232 N.W. 692, 693, we said: "In the case at bar, it is to be remembered that Brant was a co-indictee with the appellant. The contention of the State was that the appellant and the witness Brant stole the chickens in question together * * *; in other words, that the entire transaction was a joint enterprise engaged in by Brant and the appellant. The cross-examination of the witness Brant was for the obvious purpose of attempting to discredit him in the eyes of the jury as a witness, and to carry the insinuation and suggestion that he was engaged in the business of stealing chickens * * *. This also reflected on the appellant, who was indicted with him. Such cross-examination could have had no other purpose. It cannot be said that it was without prejudice to the appellant." The conviction was reversed, with the statement that "in view of all of the circumstances surrounding this case, the character of the charge, and the relationship of the witness to the appellant, we think that the prosecutor exceeded the bounds of a fair and legitimate cross-examination, and that the result was necessarily prejudicial to the appellant."

From the record before us we detect some hostility on the part of the witness Reid and his complete lack of memory concerning the statement previously given the police, which no doubt brought forth the troublesome question relating to the witness being charged in the same matter. While the record discloses some indication that the witness was not being frank or honest, it was not proper under our decisions for the State to impeach its own witness. State v. Christie, 243 Iowa 1199, 1211, 53 N.W.2d 887, 893, 54 N.W.2d 927. Also see 58 Am. Jur., Witnesses, section 792; 70 C. J., Witnesses, section 991. There can be no doubt that the first question was improper. Although the answer had been given prior to the objection,

defense counsel should have moved to strike it from the record. Even if it was the intention of the State's counsel to attempt to impeach the credibility of this witness as to his truth and veracity, the question as to his prior conviction of a felony was not properly worded. It went far beyond the limits permitted by section 622.17, Code of Iowa, 1954. He was not simply asked if he had been convicted of a felony, permissible under said section of the Code, which provides: "A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof." Here the reference was to involvement in the very crime now before the court.

■ Great care must be exercised in the use of this statutory privilege, for its purpose is *solely* to affect the weight the jury may give to the testimony offered by the witness. State v. Wehde, 226 Iowa 47, 283 N.W. 104; State v. Friend, 210 Iowa 980, 230 N.W. 425; State v. Johnson, 215 Iowa 483, 245 N.W. 728; People v. Schanda, 352 Ill. 36, 185 N.E. 183; People v. Lawson, 331 Ill. 380, 163 N.E. 149; People v. Buford, supra, 396 Ill. 158, 71 N.E.2d 340. The danger in allowing the credibility of the accused or an accomplice to be impeached by interrogations concerning prior convictions lies in tendency of juries to use the prior conviction as evidence of the fact that accused committed the specific criminal act for which he is then being tried. It must not be worded so as to implicate the defendant with the crime charged.

No instructions were demanded nor given in this case relating to impeachment by such interrogation, although under the circumstances we think they were quite necessary. State v. Johnson, 223 Iowa 962, 274 N.W. 41. As to this necessity, in People v. Granillo, 140 Cal. App. 707, 718, 36 P.2d 206, 211, we find a very good statement by the court as to possible juror reaction to evidence of this kind when it said:

"It is a matter of common experience and knowledge that once the average juror learns that the defendant has previously been convicted of a crime of the same class as that for which he is being tried, that juror will consciously or unconsciously consider and allocate to a type or class the man on trial, as dis-

tinguished from the admeasuring of his credibility as the witness on the stand; and this despite all instructions by the court, for the court may not, except by virtue of presumption, control the ordinary process of the human mind and its natural gravitation toward the ordinary and usual inferences or implications which flow from knowledge of an established fact."

Also see 6 A. L. R. 1608 for extensive annotations of the use of previous prosecutions for and convictions of a crime to impeach the credibility of a witness or accused; also Ladd Cases and Materials on Evidence, Second Edition, page 123. It would have been better under the circumstances had the learned trial court given such instructions in this case.

It is true this testimony obtained from Reid amounted to little more than an admission by the witness that he also participated in the breaking and entering. In re Estate of Johnston, 220 Iowa 328, 261 N.W. 908, 262 N.W. 488. Porter had already testified that he actually did the breaking and entering. Both of these witnesses said defendant was too drunk or sick to know of or participate in the deed. Perhaps it appears somewhat exceptional that the State would call the witness Reid and then attempt to discredit his testimony, although by some authority this may be done. United States v. Boyer, 80 App. D. C. 202, 150 F.2d 595, 166 A. L. R. 209. As stated, we have taken the contrary position. Krieg v. Grant, 248 Iowa 396, 80 N.W.2d 724. Reid's testimony was believed necessary to aid in defendant's conviction, and yet due to his reluctance to render that aid the State desired to diminish the weight the jury would give his statements. Such use of this privilege under these circumstances requires special care. However, be that as it may, we conclude the questions were not proper either as tending to affect Reid's credibility or as of proper probative value. We can think of no relevancy of this testimony on the question of the guilt of this defendant, and must therefore hold it error to have admitted it.

II. If this were the only error we would not be inclined to reverse the judgment, for it did not create any inference of guilt beyond that inferred by the admission of the other witness Porter as to his part in the break-in. However, as

pointed out by defendant, this error must be considered together with the later use of such testimony made by the county attorney, over proper objections, in his final argument to the jury. Defendant contends, with merit, that by the county attorney's statement to the jury "that Jerry Porter and *Richard* Reid entered pleas of guilty to the charge and were sentenced to the County Jail", Reid's incompetent testimony was being used to urge the inference of defendant's guilt and to suggest that defendant should be treated likewise because he was with them at the time. While we believe it was error to permit the witness to admit his plea of guilty to the same charge defendant faced, for the reason it might have been improperly solicited for its probative value, this suspicion seems confirmed by the further improper reference made to that testimony in the closing argument. When defense counsel registered his objections to that use or reference, and the trial court was called to rule on the objection, it stated before the jury: "Well, it's in the record; he said he plead guilty. It is proper argument, anything in the record. Proceed." Such ruling seems unfortunate for it tended to emphasize the former error. Clearly, then, the jury could believe the testimony, and the statement was competent, material and proper for their consideration.

As pointed out, the court gave no instruction as to the limited purpose of such record testimony concerning a prior conviction, and without such guide the jury could logically understand that the admission was of probative value in reaching its verdict as to defendant's guilt.

Furthermore, we have searched the record and found therein no evidence of any sentence previously imposed upon Reid and Porter. This implication or suggestion might also reasonably induce the jury to believe defendant should and would receive the same treatment as the accomplices. The jury could easily conclude that all three boys were acting together, and that, as the other two had plead guilty and were sentenced to jail terms, the appellant, Underwood, should be treated likewise. That reference to the penalty then was also improper argument. State v. Comes, 245 Iowa 485, 62 N.W.2d 753; State v. Eaton, 190 Iowa 212, 180 N.W. 195; People v. Rezek, 4 Ill.2d 164, 122 N.E.2d 272, 274.

In view of all the circumstances surrounding this case, the character of the charge, and the relationship of the witness to the appellant, we think the prosecutor exceeded the bounds of a fair and legitimate use of the right to interrogate as to previous convictions, and that as a result of this interrogation and the unrestricted use of the information obtained in his closing argument, the result was prejudicial to the appellant.

We are satisfied it created and amplified inferences and suggestions that were highly prejudicial to the defendant, Underwood. It almost appears well calculated to prejudice the defendant in the eyes of the jury. These statements to the jury, though understandable as prosecutor-overenthusiasm, appear quite unnecessary, but their influence on that body we are unable to determine. Defendant is entitled to a fair trial beyond doubt, and due to the circumstances surrounding these errors we have some doubts.

We conclude, if the above errors had existed separately, we would not be inclined to reverse the judgment, but when considered collectively we believe they produce such prejudice and error as to make it incumbent upon this court to accord the defendant another trial.—Reversed and remanded.

All JUSTICES concur.