[Crim. No. 3448. First Dist., Div. One. Feb. 4, 1958.]

THE PEOPLE, Respondent, v. JESSE HORACE,
Appellant.

C. L. Shinn for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

BRAY, J.—After trial without a jury defendant was convicted of attempted burglary (second degree).* He appeals from the judgment and from the order denying new trial, contending that the evidence was insufficient to support the conviction.

## EVIDENCE

About 2 a. m. Police Sergeant Engler, riding in a private automobile by the premises of the Thompson Products Company on Fulton Street in San Francisco, observed defendant standing on the sidewalk near the property line of Thompson. He also noticed that a window at the Thompson building was broken. Engler's car momentarily stopped and defendant seemed to look towards it. After turning the corner Engler looked through its back window and saw defendant stick his head around the corner as though to see where the car was going. As Engler circled the block defendant got into his automobile which was parked at the curb in front of the Thompson building. As defendant drove off, Engler followed and stopped defendant, who was alone in the car. Engler asked him what he was doing around the building. Defendant smiled and said nothing. Defendant had cuts and tears in his clothing and some glass in the cuffs of his trousers, and minute particles of glass in his clothing. There were also bits of glass on the floor mat of the car and imbedded in a hammer that was partly under the front seat. Defendant was returned to the Thompson building and stripped of his trousers, jacket and shoes. The latter had glass in the soles. Engler and another officer searched the building, entering it through the broken window. There was a brown leather case containing a movie projector beneath the window on top of a pile of brake linings. Cartons of brake linings were tipped over and linings were all over the floor. The drawers in the desks on the premises were all pulled out and appeared to have been gone through. Glass samples were taken from the floor under the window and from outside the window and from the

---

*Defendant admitted two priors with which he was charged, one, violation of section 503, Vehicle Code (theft and unlawful taking of a vehicle), and the other, burglary.

floor of the car (The entire glass that was on the sidewalk was confined to a 2-foot semicircle around the window.) Nothing was found on defendant's person that could be established as coming from the Products company, nor was anything missing from the building.

At the police station defendant denied having been in the building and said that he had been up the street visiting a friend, had just left and was getting into his car when Engler came along. Defendant was not sure whether the home of the friend was in the same block as the building. It might have been a block up.

A Thompson clerk testified that on leaving the premises around 5 o'clock the previous evening this window was intact and that the brake linings were piled near the window and not in disarray. The movie projector at that time was kept near the office. About four days prior an earthquake had broken many windows in the building but these had been boarded both on the inside and outside with carriage bolts holding the boards together.

Roger Greene of the State Bureau of Criminal Identification and Investigation testified to tests conducted on the glass particles secured by Engler. In his opinion the glass from inside and outside the window were identical within the limits of error of the experiments with that found in defendant's trouser cuffs and the floor of defendant's automobile, and that the glass came from the same source.

Defendant testified that around midnight he became intoxicated and had a fight with a couple of men at another location. In the fight he was thrown to the sidewalk where he "tussled" with his adversary. No glass was broken in the fight nor did he hit any glass. A stranger broke up the fight and offered to take defendant home. The stranger drove defendant's car to the location in front of the Products building. Defendant spent about an hour and a half in the stranger's house which was nearby, although he did not know the address. There he sobered a little. Leaving the house defendant went directly to his car. He did not notice the broken window until the officers returned him to the premises. He could not account for the presence of the glass in his cuffs and clothes unless he got them in the scuffle above mentioned, although he said that there were a "lot of places I could have gotten glass," but he could not remember getting it. He said he saw lots of broken glass on the sidewalk in front of the

building and could hear it scraping on his shoes as he and his friend walked by the building. His only explanation for the glass imbedded in the hammer was that he might have stepped on the hammer while he was in the car. He admitted that the next day he was taken by the police to the vicinity and even though they entered every house there he could not pick out the house he visited the morning before.

### Sufficiency of Evidence

Assuming, as we are required to do, in support of the judgment, every fact which the trial court could have reasonably deduced from the evidence (*People* v. *Frankfort*, 114 Cal.App.2d 680 [251 P.2d 401]) it is clear that the evidence amply supports the judgment of conviction. The window was broken, the Products premises entered and ransacked. Apparently the only thing interesting to the burglar was the movie projector which he removed from its usual place and then dropped near the window. Obviously, he had placed it there, then stepped out the window to see if the coast was clear, intending to reach in for it, if there was no one in sight. Defendant is found nearby, his car parked in front of the place. His only explanation to the officer as to his presence there was a smile and the statement that he was doing "nothing." A hammer with glass imbedded in it was found in his car; his clothing cut as if by glass; glass was found in his trouser cuffs and in the sole of his shoes. All this glass corresponds with glass from the broken window. Defendant's story of his actions that night is not only improbable but is refuted by his failure to identify any house in the vicinity as the one in which he stayed with the stranger.

This is not a case of mere "suspicion" of guilt as was the situation in *People* v. *Wilkins*, 141 Cal.App.2d 557 [297 P.2d 42], and *People* v. *Draper*, 69 Cal.App.2d 781 [160 P.2d 80], cited by defendant. In those cases the only fact proved was that the defendants had the opportunity to have attempted to commit burglary but there was no evidence that they entered or tried to enter the premises in question, nor that they had attempted a burglary. In our case not only was opportunity shown but breaking and entry also.

Even assuming, as contended by defendant, that the evidence here was also compatible with innocence (an assumption which we would find it hard to make) nevertheless as the evidence reasonably justifies the finding of the trier of

fact, we could only affirm the judgment. (See *People* v. *Newland,* 15 Cal.2d 678, 684 [104 P.2d 778].)

The judgment and order are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.