STATE OF IOWA, petitioner, v. ROBERT D. JACKSON, Judge of the Ninth Judicial District of Iowa, respondent.

No. 50147.

(Reported in 108 N.W.2d 62)

MARCH 7, 1961.

Norman A. Erbe, Attorney General, Marion Neely, Assistant Attorney General, Ray Hanrahan, Polk County Attorney, and Lawrence F. Scalise, Assistant Polk County Attorney, all of Des Moines, for petitioner.

Paul C. McDonnell, of Des Moines, for respondent.

THOMPSON, J.—The chronology of the matters involved in the case before us is important. On January 20, 1958, an indictment charging Arthur Lee Burris with the crime of robbery with aggravation was returned by the grand jury of Polk County. A question as to Burris' sanity having been raised,

he was tried on that issue and the jury found him insane at the time of the trial. He was accordingly committed to the department for criminally insane of the Men's Reformatory at Anamosa, on February 10, 1958. He was first examined there by Dr. Joseph Stomel (referred to also in the briefs as Stamel), the director of the department for criminally insane at the reformatory. On January 27, 1960, upon a further examination Burris was found to be sane, and in accordance with section 783.4 of the Code of 1958 notice was given to the Polk County authorities. The material part of section 783.4 is quoted: "If the accused is committed to the department for the criminal insane, as soon as he becomes mentally restored, the person in charge shall at once give notice to the sheriff and county attorney of the proper county of such fact, and the sheriff, without delay, must receive and hold him in custody until he is brought to trial or judgment, as the case may be, or is legally discharged * * *."

Burris was thereupon returned to Polk County and appeared before the court on February 3, 1960, when counsel was appointed for him. Pleas of not guilty and not guilty by reason of insanity at the time of the commission of the offense were interposed, trial was had and on May 19, 1960, the jury returned its verdict finding Burris guilty as charged. On June 14, 1960, the respondent, the presiding judge at the trial, denied Burris' motion for new trial, but on the same date, and on his own motion, he entered an order that no judgment be rendered on the verdict, that the verdict be set aside and the indictment dismissed. From this order the petitioner State of Iowa brings certiorari.

I. The question for our determination here is whether the respondent acted illegally in making the order complained of. It was the evident thought of the respondent that Burris had been denied a speedy trial as required by the provisions of section 10 of Article I of the Constitution of the State of Iowa, and section 1 of the 14th Amendment to the Constitution of the United States. The constitutional requirement for a speedy trial for every accused is implemented in Iowa, so far as the

circumstances of the present case are concerned, by Code sections 795.2 and 795.3 which we quote:

"795.2 Delay in trial. If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next regular term of the court in which the indictment is triable after the same is found, the court must order it to be dismissed, unless good cause to the contrary be shown.

"795.3 Discharge on undertaking. If the defendant be not indicted or tried as above provided, and sufficient reason therefor is shown, the court may order the prosecution continued from term to term, and discharge the defendant from custody on his own undertaking, or on the undertaking of bail for his appearance to answer the charge at the time to which the same is continued, but no continuance under this section shall be extended beyond the following three terms of the court."

We said in Pines v. District Court, 233 Iowa 1284, 1290, 1291, 10 N.W.2d 574, 578: "These statutory provisions embody the legislative conception and declaration of what the term 'speedy trial', as used in the constitutions, means." See also McCandless v. District Court, 245 Iowa 599, 604, 61 N.W.2d 674, 677. The respondent's action must depend for its legality upon a finding that Burris was denied a speedy trial as defined by one or both of the foregoing sections. It is apparent that he was not brought to trial at the next term of court, and that in fact more than three terms elapsed between the indictment and the trial. Our question, then, is whether "good cause" was shown for the delay; or whether the facts are such that Burris must be held to have waived his right to a speedy trial.

We said in McCandless v. District Court, supra, 245 Iowa at 604, 605, 61 N.W.2d 674, 677: "In order for an accused to enjoy the privilege of a 'speedy trial', he must make a demand to the court for an early trial. If he fails to do so he waives not only the privilege provided by the constitution but the requirement of the statutes as well, and it is therefore unnecessary * * * to show 'good cause' for the delay."

II. Much attention is devoted by the parties to the question whether a motion in arrest of judgment may be granted

on the ground that the defendant did not receive a speedy trial; and whether the court may set aside a verdict and indictment on its own motion. The questions are technical, and we shall not decide them. We think the error in the respondent's ruling clearly appears from the case as made by the record before us.

 III. It is apparent the respondent based his conclusion Burris did not receive a speedy trial upon the testimony of Doctor Stomel. This witness, evidently a qualified psychiatrist, testified for the State at the May 1960 trial. In part the record shows this:

"Q. So was there any period from April 10, 1958 to January 27, 1960 you weren't sure whether he [Burris] was sane or insane? A. Oh, yes. I was positive he was sane from the first examination but I always give a man the benefit of the doubt. I will never make any conclusive recommendations until I am dead sure. And it takes sometimes more than two years to be dead sure of it."

In other testimony, Doctor Stomel said Burris was "a passive-aggressive personality disorder of the aggressive type with an occasional depressive mood. I recommended certain medication for him and psychotherapy and religious therapy which he received after 1 came into the institution on a full-time basis. At that time I was only going to the institution occasionally. And he received that treatment until I saw him last, which was January 27, 1960, at which time I gave a complete psychiatric report to the warden."

We do not think this testimony goes so far as the respondent believed. The doctor appears to be saying only that, while he believed from his first examination that Burris was then sane, he wanted in fairness to him to be doubly sure, since sometimes a study of a patient for two years is required for a certain diagnosis. He recommended certain treatments for him, which he received; and it was not until January 27, 1960, that he felt assured enough to make a definite report of sanity to the warden. Necessarily, those in charge of a patient committed as insane must have some latitude in diagnosing and treating him. If, although the psychiatrist thinks, on first

examination, that the patient is sane, he feels it advisable to make further study and give some treatments in the interest of the utmost possible certainty, who is to say such a course is wrong? It must be remembered that Burris was charged with a serious offense, and that two months before Doctor Stomel's first examination a jury had found him to be insane. Some precautions before sending him back as so speedily recovered were by no means improper.

IV. But we hold also it is not necessary to disagree with the interpretation of the testimony made by the learned trial court in order to demonstrate the error into which he fell. It must be remembered that at all times until January 27, 1960, Burris was held in the department for criminally insane of the reformatory under an adjudication of insanity. Whether the superintendent of this department, or the warden of the reformatory, or both, were remiss in failing to find him to have recovered his sanity at an earlier date and notifying the Polk County sheriff and county attorney is beside the point. There was nothing the prosecuting officers of the county could do in the way of bringing Burris to trial so long as he was held under the insanity judgment rendered after trial by a jury on that issue. Burris had a remedy, provided by Code section 229.37. This gives one confined as insane the right to the writ of habeas corpus, and says "and the question of insanity shall be decided at the hearing."

The question of the right of the State to hold and try one adjudicated to be insane was squarely before this court in Quaintance v. Lamb, 185 Iowa 237, 241, 170 N.W. 398, 399. There, after the arrest of Quaintance on a preliminary information charging him with the crime of murder, but before indictment, he was found by the commissioners of insanity to be insane. The sheriff refused to surrender him, and the court was proceeding to try him on an indictment later returned. A writ of habeas corpus was issued, and sustained by this court. After citing the then Code section 2280, which in effect is similar to our present section 783.4, supra, we said: "This plainly contemplates that the prisoner shall be treated at the Hospital for the Insane until restored to reason. He could not be put

on trial before. The superintendent of the hospital is to determine when he is cured, and issue his warrant accordingly." So in the case before us, it was the duty of the person in charge of the department for the criminally insane to determine when Burris was restored to sanity, and notify the sheriff of Polk County. Until this was done, he could not be tried.

We followed the holding in the Quaintance case in Maher v. Brown, 225 Iowa 341, 345, 280 N.W. 553, 555. This was an action in certiorari, brought by Maher to question the legality of the action of the respondent as judge of the Fremont District Court in refusing to dismiss an indictment. The motion was predicated upon the then Code section 14024, now section 795.2, supra. It appeared that prior to the return of the indictment against Maher he had been committed to the state hospital at Clarinda as an inebriate. While he was there confined the indictment was returned and the next regular term of court elapsed. The respondent-judge refused to dismiss the indictment, holding that Maher's confinement in the hospital was good cause for the failure to try him at the next term. We annulled the writ, citing and quoting from Quaintance v. Lamb, supra, and further saying: "Albert Maher having been committed to a State hospital, was subject to the exclusive jurisdiction of the board of control of state institutions. He was committed to the State hospital for treatment, and until he was cured of the disability from which he was suffering the criminal court would have no right to force him to stand trial."

It is true we have said the trial court has a considerable discretion in determining whether good cause is shown for the failure to award a speedy trial under our implementing statutes. But we think that when it clearly appears there was such good cause, that giving the accused the full benefit of the evidence shown by the record good cause is shown without reasonable possibility of question, no such discretion lies. Such was the situation here.

V. Another consideration appears in the instant case. We think, as indicated above, that as long as Burris was held under the adjudication of insanity he could not be tried on the criminal charge pending in the Polk District Court. Failure of the

person in charge of the department for criminally insane to make the proper evaluation of Burris' mental condition would not permit him to be returned for trial in the absence of notice to the sheriff and county attorney of Polk County. But if we were to say that Burris was at all times sane after April 10, 1958, and should have been returned for trial, and that failure of the authority at Anamosa to notify the Polk County attorney and sheriff did not prevent his return; it nevertheless appears that the rule laid down in Hottle v. District Court, 233 Iowa 904, 914, 11 N.W.2d 30, 35, would be applicable. We there said, after citing Pines v. District Court, supra, page 1296 of 233 Iowa, page 581 of 10 N.W.2d, to the effect that it is incumbent upon one accused of a crime to make some effort to secure a speedy trial by demand therefor, resistance to postponement, or in some other way, to entitle him to a dismissal of the charge, that "We hold that the rule adopted by us in Pines v. District Court, supra, that the accused must make a demand for trial, resistance to postponement, or some other effort to secure a speedy trial applies even though he is in the penitentiary serving a sentence for another crime." It is evident that if Burris was insane, he could not be tried until his sanity had been restored, so that "good cause" for delay would appear; if he was sane, it was his duty to make an appropriate effort to secure a speedy trial, and his failure so to do would be a waiver of the right.

Burris was not denied a speedy trial under our statutes which implement and define the limits of the constitutional provisions therefor, and the authorities by which we have interpreted and applied them.—Writ sustained.

All JUSTICES concur.