STATE OF IOWA, appellee, v. WILLIAM GEBHART, appellant.

No. 51578.

(Reported in 134 N.W.2d 906).

844

MAY 4, 1965.

Mead & Scieszinski, of Wilton Junction, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, Garry D. Woodward, Special Assistant County Attorney, and Harvey G. Allbee, Jr., Muscatine County Attorney, for appellee.

THOMPSON, J.—The poet who wrote "Grow old along with me, the best is yet to be" surely did not have the defendant in the instant case in mind. At 91, an age when the few who get that far are thought to have reached a time of peace and wisdom, he was accused of the wrongful killing of his wife, Sarah Gebhart, and her sister, Anna Yarbough. Each woman was killed by several gunshot wounds; and since there was no one present at the time of the killings except the two victims and the defendant, and he admitted the shootings immediately afterward, the impression arises that he had somewhat to do with them. His substantial defense, not material to the questions raised on this appeal, was that he killed in self-defense.

This appeal is concerned with the conviction of the defendant on the plea of guilty of the crime of manslaughter in the killing of Sarah Gebhart. As we understand them the contentions are two—first, that although he had been held to the grand jury on March 31, 1964, after hearing on preliminary information, he was not indicted within thirty days thereafter, and so was entitled to his discharge under section 795.1 of the Code of 1962, as amended by chapter 332, section 1, Acts of the Sixtieth General Assembly; second, that the dismissal of the charge first filed, on which he was held to the grand jury, was a final and complete dismissal of the charge and precluded the State from any further prosecution. A discussion of these necessitates a statement of the procedures involved.

The offense was alleged to have been committed on March 26, 1964. On March 27 next a preliminary information charging the defendant with the murder of Sarah Gebhart was filed in justice court. On March 31, after hearing, he was held to await the action of the Muscatine County grand jury at its next session. On April 30 the then presiding judge, Honorable M. L.

Sutton, held an informal hearing at which he called the attention of the State and the defendant to section 795.1, as amended, supra. This was the thirtieth day after the defendant had been held. No indictment or county attorney's information had been then filed. On May 1 next a true information was filed by the county attorney, charging the defendant with the crime of murder. This information was approved by the court and ordered filed. At the same time the first information was dismissed on motion of the State. On May 12 the defendant filed a motion to dismiss the information on the grounds that it was filed more than thirty days after he had been held on the first charge, contrary to section 795.1; and because the original charge had been dismissed. This motion was denied by the court on May 23. On June 20 next the court likewise denied a demurrer filed by the defendant which also raised the question of the true information being filed more than thirty days after the defendant had been held to the grand jury under the original charge. On August 3 the defendant entered his plea of guilty to the included offense of manslaughter, which plea was accepted by the court, and sentence was imposed in accordance with the statute. This was apparently after the defendant had been tried on the charge of murdering Anna Yarbough, with a jury verdict therein of guilty of manslaughter. At all times material the defendant was represented by the same counsel who appear for him in this court. The sentence in each case was that the defendant be confined in the penitentiary for a term not exceeding eight years, and pay a fine of $500, all as provided by section 690.10.

I. It is essential to set out section 795.1 as it now appears in the law: "When a person is held to answer for a public offense, if an indictment be not found against him at the next regular term of the court at which he is held to answer *or within thirty days, whichever first occurs,* the court must order the prosecution to be dismissed, unless good cause to the contrary be shown. *An accused not admitted to bail and unrepresented by legal counsel shall not be deemed to have waived his privilege of dismissal or be held to make demand or request to enforce a guarantee of speedy trial, and the court on its own motion shall carry out the provisions of this Act as to dismissal."* The itali-

cized parts are so marked to show the additions to the statute made by the Sixtieth General Assembly.

It is the contention of the defendant that since he was held to answer for an indictable offense, and no indictment was returned against him within thirty days, he is entitled to be discharged; that the State has lost its right to prosecute him for the offense charged in the true information and the court had no jurisdiction to approve the information or to permit any further proceedings to be had. We are slow to believe that the legislature, in enacting the statute, intended to exonerate an offender from the consequences of his crime because of a failure of the prosecution to proceed against him within the time limited.

■■ Without doubt, the intent of the Act is to insure a speedy trial, in accordance with the right guaranteed by the Iowa Constitution. We have held, in a series of cases, that sections 795.1 and 795.2 are intended to implement Article I, section 10, of our Bill of Rights. We have also held that a demand for a speedy trial must be made by a defendant; otherwise he will be deemed to have waived this right. State v. Long, 256 Iowa 1304, 1308, 130 N.W.2d 663, 665; State v. Jackson, 252 Iowa 671, 674, 108 N.W.2d 62, 64; McCandless v. District Court, 245 Iowa 599, 604, 605, 61 N.W.2d 674, 677; Pines v. District Court, 233 Iowa 1284, 1293, 10 N.W.2d 574, 579.

It is true these cases were concerned with the provisions of section 795.2 dealing with procedures after indictment. In amending section 795.1 the legislature was attempting to remedy a mischief that did not exist. But in so doing it demonstrated its intent that one who is represented by counsel was not the primary object of its concern.

It may be that there is a difference between the situation of one who has been indicted, and does not demand a speedy trial, under section 795.2, and another who has been charged and held without indictment, with whose situation section 795.1 is concerned. The indicted defendant knows that he must face a trial, and if he wants quick action, under our holdings, must make his demand therefor in order to make section 795.2 operative, with the present exception of those held in jail without counsel. But the defendant who has not been indicted may well be thought not

to be required to make a demand that he be so charged. We have never so held; our cases deal with the situation under section 795.2. The legislature, in amending section 795.1 to provide that one not indicted within thirty days or at the next regular term of court will not be held to have waived his rights under the section if he is held in jail and is not represented by counsel, was evidently fleeing when no man pursued; it was attempting to correct an evil that did not exist. But by the amendment it has cast some doubt upon the question of whether a demand for indictment must now be made by one not admitted to bail and not represented by counsel. The statute, as worded after the amendment, seems to raise an implication that one who is not held in jail or is represented by counsel, must make such a demand, even during the period of thirty days or at the next regular term of the court, upon pain of a holding that he has waived his rights under the section.

Whether an accused who has been charged but not indicted must now take some affirmative steps to insist upon a speedy accusation we do not find it necessary to determine upon this appeal. There was ample ground for the trial court's ruling refusing to dismiss the information filed one day late, in that good cause, within the meaning of the statute, appears. At the hearing before Judge Sutton on April 30 this appears:

"The Court: And at that time indicated that you would prefer that this matter not be rapidly pushed, and in fact would prefer to not have it tried until probably the September term of court. Is that correct?

"Mr. Mead: I think your statement there needs just a little clarification. The latter part of it is true; but I didn't indicate any willingness to defer with the calling of the Grand Jury or the entering of the indictment.

"The Court: I see. Well, I think that's a fair statement. I don't think that you did. You did indicate to me when I called your attention to the fact that the Grand Jury as yet had not been impaneled, that you were in no hurry; however that you were willing to wait and that he was happy in jail, and both as to bedding and as to food.

"Mr. Mead: That's right. He told me both of those things."

██ ██ From this the conclusion must be drawn that the defendant was in no hurry for a determination of the case; he was happy in jail, and in fact would prefer to have his trial delayed until September. This, we think, unmistakably demonstrates good cause supporting the exercise of the court's discretion in refusing to dismiss the information. The defendant urges that the court made no finding of good cause. This was not necessary; it is sufficient if this element is shown by the record. In Keegan v. District Court, 237 Iowa 1186, 1188, 24 N.W.2d 791, 792, we had an identical situation. There we said:

"Plaintiff argues that the exception contained in the statute, 'unless good cause to the contrary be shown', is not in question in this case, since the court made no finding that good cause had been shown, and there is nothing in the record upon which such finding could be made. It was not necessary that the ruling on the motion should show any findings of the court. It was sufficient that it either sustained or overruled it. We do not agree, however, that there was nothing in the record upon which such finding could be made."

To the same effect is Greiman v. District Court, 249 Iowa 333, 86 N.W.2d 819, 820, 821, where the holding in the Keegan case was referred to and approved. Since the record shows, as quoted above, that the defendant was not seeking a speedy trial, in fact was satisfied to remain in jail and preferred a trial some months later, the court was justified in denying his later complaints raising the question of failure to indict. The record shows good cause for such rulings.

II. The second and final contention of the defendant is that by dismissing the preliminary charge upon which he had been held to the grand jury, the State foreclosed itself from filing another information based on the same offense. Whether this amounts to a plea of former jeopardy, or that the court had lost jurisdiction, or that as a matter of procedure it could no longer entertain a second charge, is not entirely clear; but exactness is not important.

██ ██ In any event, the dismissal of the prior charge did not prevent the State from filing a second, within the limits of the statute of limitations; and, as applied to murder charges,

there is no limitation. Section 752.1, Code of 1962. The question is determined by section 795.5 of the 1962 Code. It is a part of chapter 795, which also contains section 795.1, upon which the defendant relies, and section 795.2, to which we have referred above. The obvious purpose of this chapter is to protect the rights of an accused by implementing constitutional guarantees of a speedy trial; and, as the amendment by the Sixtieth General Assembly shows, it is particularly careful of one who is held in jail without counsel. But the chapter, while meant to shield the defendant from unjust delays, is not intended to be a device by which, through technicalities, he can obtain absolute immunity from prosecution for felonious offenses. Section 795.5 provides:

"The court, upon its own motion or the application of the county attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner. Such dismissal is a bar to another prosecution for the same offense if it is a misdemeanor; but it is not a bar if the offense charged be a felony."

The offense charged against the defendant was a felony. The court on May 1, the thirty-first day after the defendant had been held to the grand jury, dismissed the charge for the stated reason that "other charges have been filed." The "other charges" were the county attorney's true information. The case seems to be directly within the provisions of section 795.5. See also Greiman v. District Court, supra, loc. cit. 249 Iowa 336 to 338 inclusive, 86 N.W.2d 821, 822, and cases there cited and analyzed. Among these is State v. Brown, 128 Iowa 24, 26 to 28 inclusive, 102 N.W. 799, 801, which is much like the case at bar on its facts. The defendant had been held on preliminary information to the next grand jury, which failed to indict. A later grand jury returned an indictment. We said: "This, under our statutes, it had a right to do." In Greiman we also quoted with approval from State v. Bige, 195 Iowa 1342, 1344, 193 N.W. 17, 19: "A dismissal of the first indictment, had it been granted, as requested by the defendant, would not be a bar to a second indict-

ment, as claimed by defendant, if the second was returned within the statutory period of limitations. * * * The defendant had not been placed in jeopardy by the mere returning of the indictment."

The defendant cites and relies strongly upon cases from other jurisdictions. Whether they are based upon statutes similar to ours we do not know, nor do we inquire. Our own cases and our statutes are determinative of the questions involved in this case; and if, in considering similar statutes, appellate courts of other states have reached contrary results, we are not in accord. We are satisfied with our own decisions.

Since Code chapter 795 is primarily intended to insure speedy trials for those accused, we think one who advises the court he is in no hurry, that he is happy in jail, and would in fact prefer a trial some months later, is in no position to complain if the court finds good cause why he was not indicted within thirty days after being held to the grand jury and refuses to dismiss an information returned on the thirty-first day. Section 795.5, supra, is definite that a dismissal of a felony charge does not prevent another complaint based on the same offense. There is a modern trend toward exonerating criminal case defendants, even when obviously guilty, from responsibility for their offenses, because of what is thought to be some technical denial of due process, or of violation of some protection accorded by the Bill of Rights of the Federal or State Constitution. Every accused should be given the fullest protection in having a fair trial under these provisions of the law, and any statutory protections that may be afforded him. But the interest of society also demands that these protections be only those to which he is entitled under a fair and reasonable construction of the applicable constitutional and statutory provisions. We find nothing here which shows any violation of rights afforded the defendant, or any denial of a fair trial.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.