**STATE of Iowa, Appellee,**

v.

**Charles Edward ALLNUTT, Appellant.**

No. 52063.

Supreme Court of Iowa.

Feb. 6, 1968.

L. M. Hullinger and Margaret L. Beckley, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and William G. Faches, Linn County Atty., Cedar Rapids, for appellee.

LeGRAND, Justice.

At approximately 3:00 o'clock A.M. on January 14, 1965, while making a routine check of the area, Detective Raymond K. Baker came upon defendant and another man attempting to break into the Hide-A-Way Tavern in Cedar Rapids, Iowa. The detective drew his gun, ordered the men not to move, and radioed for assistance. Defendant, who was armed with a crowbar, advanced toward Detective Baker, despite an order to stop. Defying a second command to stop, defendant struck the officer and knocked him to the ground. As he fell, Detective Baker fired one shot which struck defendant in the chest.

Further police investigation revealed two other crowbars and a screwdriver near the door of the tavern. The door itself was not opened but had been tampered with and showed gouge and splinter marks. Directly beneath the door were wood chips which matched the damaged portions of the door frame. The manager of the tavern testified he had locked the premises shortly before the time in question. Both the door and the door jamb were then undamaged. He also testified that he kept both merchandise—principally liquor, beer and cigarettes—and money in the tavern.

The above recitation, although not without dispute, is the version of the evidence most favorable to the State, and we are obliged to view it in this light in considering defendant's appeal. State v. Harless, 249 Iowa 530, 86 N.W.2d 210; State v. Poffenbarger, 247 Iowa 552, 74 N.W.2d 585 and citations; State v. Wimbush, Iowa, 150 N.W.2d 653, 654.

As a result of this incident defendant was charged by county attorney's information with attempting to break and enter with intent to commit larceny in violation of sec-

tion 708.10, Code of Iowa. He was subsequently tried and convicted of this crime, and he appeals, relying on four errors which he claims require reversal: (1) That he was denied a speedy trial in violation of section 795.2, Code of Iowa; (2) That he was entitled to a directed verdict for the State's failure to prove intent to commit larceny; (3) That it was prejudicial error to specially instruct the jury on his credibility as a witness; and (4) That it was prejudicial error to permit the County Attorney to cross-examine him concerning previous felony convictions.

I. In his first assignment of error defendant asserts his conviction cannot stand because the State failed to give him a speedy trial, as required under section 795.2, Code of Iowa, which provides:

"Delay in trial. If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next regular term of the court in which the indictment is triable or within sixty days, whichever first occurs, after the same is found, the court must order it to be dismissed, unless good cause to the contrary be shown. An accused not admitted to bail and unrepresented by legal counsel shall not be deemed to have waived his privilege of dismissal or be held to make demand or request to enforce a guarantee of speedy trial, and the court on its own motion shall carry out the provisions of this section as to dismissal."

The indictment (in this case, a county attorney's information) against defendant was filed January 20, 1965. He was not brought to trial until June 14, 1965, almost five months later. Defendant claims the 60-day limitation is applicable here and that he should have been tried within 60 days from January 20; that he demanded a speedy trial; and that his motion for dismissal made *after trial* should have been sustained.

■ Section 795.2, Code of Iowa, implements Article I, Section 10, of the Constitution of Iowa. State v. Gebhart, 257 Iowa 843, 847, 134 N.W.2d 906, 908. Defendant's right to a speedy trial is also guaranteed by Amendment 6 to the Constitution of the United States, which was recently made applicable to the trial of criminal charges in state courts. Klopfer v. State of North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L. Ed.2d 1.

■ The purpose of these protections, both constitutional and statutory, is to relieve one accused of a crime of the hardship of indefinite incarceration awaiting trial or the anxiety of suspended prosecution, if at liberty on bail, and to require courts and peace officers to proceed with the trial of criminal charges with such reasonable promptness as proper administration of justice demands. 21 Am.Jur.2d, Criminal Law, section 242, page 279; McCandless v. District Court of Polk County, 245 Iowa 599, 607, 61 N.W.2d 674, 679. An extended discussion of the history and purpose of the rule appears in Pines v. District Court etc., 233 Iowa 1284, 10 N.W.2d 574.

■ It has long been held, both in this state and elsewhere, that a defendant, unless he is neither admitted to bail nor represented by counsel, may waive the constitutional and statutory provisions assuring him a speedy trial. 21 Am.Jur.2d, Criminal Law, section 253, page 289; State v. Rowley, 198 Iowa 613, 615, 198 N.W. 37, 38, 199 N.W. 369; McCandless v. District Court of Polk County, 245 Iowa 599, 604, 61 N.W.2d 674, 677; Pines v. District Court etc., 233 Iowa 1284, 1302, 10 N.W.2d 574, 583; State v. Long, 256 Iowa 1304, 1307, 130 N.W.2d 663, 665. Defendant here was at all times represented by counsel and the exception in the statute therefore has no application.

■ Since it is undisputed defendant was not brought to trial within 60 days from the filing of the county attorney's information, he is entitled to a dismissal under section 795.2 unless he has waived his right to a speedy trial or unless good cause for postponing the trial beyond that time is shown.

Defendant argues that only the question of good cause is before us because he made a demand for a speedy trial at the time of arraignment, which negates any question of waiver. For reasons stated later we do not agree. We hold both waiver and "good cause" under the statute are presented for determination, although our conclusion as to the former makes it unnecessary to discuss "good cause."

Defendant, having admittedly made a request for a speedy trial at the time of arraignment, claims he has done all he was required to do and the court must, under the language of the statute, dismiss the charge unless the State shows good cause why trial was delayed beyond 60 days from the filing of the information. The State, on the other hand, asserts it is not enough for defendant merely to request a speedy trial. He must also, the State argues, demand dismissal of the charge by timely motion before trial or he waives his rights under the statute. A discussion of this matter necessitates a brief recitation of the factual background.

As already mentioned defendant suffered a gunshot wound at the time of his arrest. He was present in court when arraigned but was taken directly from arraignment to the hospital at the Men's Reformatory, Anamosa, Iowa, where he was serving a term on another conviction. Defendant was hospitalized from January 20th to February 22nd. Thereafter from time to time until April 5th he returned to the hospital for periods of treatment or examination. Neither defendant nor his attorney notified the court or the county attorney when defendant was released from the hospital, although the county attorney and defendant's counsel had several conferences concerning the case during this period. On June 8, 1965, the county attorney filed an application stating the defendant was able to stand trial and asking his return from the Men's Reformatory for that purpose. This application was granted and trial was set for June 14, 1965, just one week later. On June 14th, prior to the start of the trial, defendant filed a motion to quash on other grounds and made no mention then of his right to dismissal under section 795.2. The case proceeded to trial, and no request for a dismissal under that statute was made until defendant filed his motion for new trial after the jury returned a guilty verdict against him.

We have already pointed out when a defendant may waive the constitutional and statutory provisions which assure him a speedy trial. However, we have never been asked to decide the precise issue now presented. May a defendant postpone his motion under section 795.2, Code of Iowa, until after trial and then secure a dismissal of the offense for which he has been convicted?

A somewhat similar matter was presented but not determined in State v. Jackson, 252 Iowa 671, 108 N.W.2d 62, where the decision was based on other grounds. In those states where this problem has arisen, it is almost universally held a defendant who has been denied a speedy trial must move for dismissal before going to trial. Failure to do so constitutes a waiver of his rights. 21 Am.Jur.2d, Criminal Law, section 253, page 290; 22A C.J.S. Criminal Law § 470, page 41; Randolph v. State, 234 Ind. 57, 122 N.E.2d 860, 864; People v. Stahl, 26 Ill.2d 403, 186 N.E.2d 349, 350; People v. White, 2 N.Y.2d 220, 159 N.Y.S.2d 168, 140 N.E.2d 258, 260; People v. Wilson, 60 Cal.2d 139, 32 Cal.Rptr. 44, 383 P.2d 452, 457; annotations, 57 A.L.R.2d 302, 336.

In Randolph v. State, supra, the court said, "It has generally been held that the right to a discharge for delay in bringing a defendant to trial is waived if the proper motion is not made before the trial begins. (citations) * * * In this case appellant participated in the trial without objection. By his acquiescence and participation in the trial appellant conclusively waived his rights under the statute. By such acts he aided in the consummation of the very act which the statute, if timely

invoked, might have prevented. The motion for discharge was not filed until after (1) the trial of the defendant-appellant had been completed, (2) the verdict of the jury returned and the jury discharged, and (3)· the court had denied his motion to dismiss because of irregularities in the verdict and judgment."

In People v. Wilson, supra, the California Supreme Court put it this way, "The right to a speedy trial must therefore be asserted, if at all, in the court where the prosecution is pending, and prior to the commencement of trial. * * *" Similar language, with some variations, may be found in People v. Piscitello, 7 N.Y.2d 387, 198 N.Y.S.2d 273, 165 N.E.2d 849; Commonwealth v. Smihal, 182 Pa. Super. 232, 126 A.2d 523.

We find these authorities persuasive. Any other holding would subvert the purpose of the statute itself, which is to protect the defendant from undue delay. It is not intended to be a device by which, through technicalities, he can obtain immunity from prosecution. State v. Gebhart, supra and citations.

In several of our decisions we have used language which indicates agreement with the authorities already cited. For instance in McCandless v. District Court of Polk County, supra, at page 606 of the Iowa Reports at page 678 of 61 N.W.2d, we said, "It has been well said that the rights given the accused by the Constitution and our statutes are shields, not weapons, and being so intended by the legislature, we must give meaning to that intent. If this is true, what must one do in order to use the shield? Must the State carry it for him? We think not."

In Pines v. District Court, supra, at page 1297 of the Iowa Reports, at page 581 of 10 N.W.2d, we quoted with approval this language from State v. McTague, 173 Minn. 153, 216 N.W. 787, "The right to a speedy trial is valuable, and it will be zealously guarded by the courts with resolute courage. It is for the protection of personal rights, not to embarrass the administration of criminal law nor to defeat public justice. It is a privilege to the accused. If he does not claim it, he should not complain. It may be waived. The statute is a means of enforcing the constitutional provision. The spirit of the law is that the accused must go on record in the attitude of demanding a trial or resisting delay. If he does not do this, he must be held, in law, to have waived the privilege. * * *"

We realize these quotations do not deal with the exact point now before us, but they are helpful in pointing out a defendant may not fail to declare himself until it is too late and then take advantage of a protective statute, not to insure a speedy trial, but rather to set aside a conviction after trial has been had. Our language in State v. Gebhart, supra, at page 851 of the Iowa Reports, at page 910 of 134 N.W. 2d, appears to be particularly appropriate here, "Every accused should be given the fullest protection in having a fair trial under these provisions of the law (protection accorded by Bill of Rights of the Federal or State Constitution) and any statutory protection that may be afforded him. But the interest of society also demands that these protections be only those to which he is entitled under a fair and reasonable construction of the applicable constitutional and statutory provisions."

We hold defendant waived his right to a speedy trial under section 795.2 by failing to move for a dismissal until after trial had been completed and a jury verdict returned. There is no rule, constitutional or statutory, which permits a defendant to use this cherished right simply to challenge an adverse verdict.

It is a travesty to require the State to call a jury, produce witnesses, provide court personnel, present its evidence, and secure a conviction while defendant sits silently by with an ace-in-the-hole which renders this entire judicial exercise a nullity. If a defendant should not be tried,

let him say so before, not after, he is subjected to that ordeal.

We cannot believe our statute, or the constitutional safeguards defendant relies on, requires the result he seeks. There is no merit in defendant's claim he was denied a speedy trial.

In view of this holding it is not necessary for us to consider the State's claim there was good cause for failing to try this case within 60 days from the filing of the county attorney's information.

■ II. As an essential element of this offense, the State must prove defendant's intent was to commit larceny when the attempt to break and enter occurred. Defendant insists there was no evidence from which the jury could find such intent. If this is true, defendant was entitled to the directed verdict which he sought by timely motion.

■ Intent is a state of mind difficult of proof by direct evidence. It may, however, be established by circumstantial evidence and by inferences reasonably to be drawn from the conduct of the defendant and from all the attendant circumstances in the light of human behavior and experience. It is almost uniformly held that where one breaks and enters the property of another in the nighttime an inference may be drawn that he did so to commit larceny. People v. Horace, 157 Cal.App.2d 395, 321 P.2d 64; State v. Hopkins, 11 Utah 2d 363, 359 P.2d 486; People v. Nichols, 196 Cal.App.2d 223, 16 Cal.Rptr. 328; People v. Lyles, 156 Cal. App.2d 482, 319 P.2d 745; State v. Woodruff, 208 Iowa 236, 225 N.W. 254 and citations; 13 Am.Jur.2d, Burglary, section 52, page 352.

Defendant relies heavily upon the case of State v. Cook, 188 Iowa 655, 176 N.W. 674, but we find neither that case nor State v. Farrand, 192 Iowa 809, 185 N.W. 586 persuasive here. Rather we find State v. Woodruff, supra, to be more in point. There we held the unexplained breaking

and entering of a dwelling house in the nighttime sufficient to sustain a verdict that the breaking and entering was done with intent to commit larceny. Further authority for this conclusion is found in State v. Worthen, 111 Iowa 267, 82 N.W. 910, where we said, "Some presumptions are to be indulged in against one who enters a building unbidden, at a late hour of night, else the burglar caught without booty might escape the penalties of the law. * * * People are not accustomed, in the nighttime, to enter the homes of others, when asleep, with innocent purposes. The usual object is theft, and this is the inference ordinarily to be drawn, in the absence of explanation from breaking and entering at night, accompanied by flight upon discovery, even though nothing has been taken."

The same presumption should apply when, as here, one attempts to break and enter a business establishment, rather than a dwelling and when violence, rather than flight, is used to escape arrest.

As pointed out in State v. Woodruff, supra, this presumption, or inference, exists only when the charge alleges an intent to commit larceny. At page 244 of the Iowa Reports at page 257 of 225 N.W. in the Woodruff decision we said, "It is only when the charge is breaking and entering with intent to commit larceny that the intent may be inferred from the unexplained breaking and entering. The reason for this rule is that experience teaches that, in the great majority of cases of unlawful breaking and entering, the act done is with intent to steal. * * *" Again at page 245 at page 257 of 225 N.W. we said, "It is uncontroverted that the defendant broke and entered the Tellin home; there is no explanation of his breaking and entering said home. * * * The indictment charged the defendant with the breaking and entering of the home in the nighttime, with intent to commit larceny. Under the aforesaid well established rule of law, supported by the great weight of authority, the jury, the triers of the facts, are privileged to infer that his intent was to commit larceny."

■ Applying these rules to defendant's conduct, we find the building in question was a tavern closed and locked for the night; it housed merchandise of substantial value and money; defendant had been there earlier in the evening; when accosted defendant and an associate were in the process of attempting to gain entry by the use of crowbars; and at the time of his arrest defendant assaulted the officer with a crowbar. No explanation as to defendant's possible legitimate purpose for desiring entry into the tavern was offered.

Under these circumstances there was ample evidence to permit the jury to determine defendant's intent at the time in question. State v. Worthen, supra; State v. Woodruff, supra, and citations.

Defendant attempts to make some distinction in the proof required and the inferences to be drawn between an *actual* breaking and entering and an *attempt* to break and enter. There is language by way of dictum in State v. Woodruff, supra, which lends him superficial support. There is no reason for such distinction here. Defendant's overt act had virtually succeeded when the fortuitous arrival of the police prevented its completion. The door to the tavern was literally hanging by a thread. This, together with the other circumstances, heretofore related, justifies inferences as to his intent which are just as permissible as if entry had been accomplished.

We hold the question of defendant's intent was properly submitted to the jury.

III. Defendant's third assignment of error deals with the trial court's instruction concerning his credibility as a witness. By one instruction, which is not complained of here, the trial court properly explained to the jury the standard by which the credibility of all witnesses should be tested. The trial court also gave the following instruction by which it called specific attention to the credibility of defendant's testimony:

"The Defendant is a competent witness in his own behalf, and in determining the weight and credit to be given to his testimony you are to be governed by the same rule as is given you in these instructions for determining the weight and credit to be given by you to the testimony of each and every other witness before you. You are not required to receive blindly the testimony of such accused person as true, but you are to consider whether it is true and made in good faith, or only for the purpose of avoiding conviction. You should take into consideration his interest in the result of the case, the circumstances under which the testimony was given, and all of the circumstances connected therewith. If you believe that his testimony is given in good faith, you should give it the same consideration which you give the testimony of other witnesses believed by you to be given in good faith."

This is our fourth recent encounter with this type of instruction. State v. Ford, 259 Iowa 744, 145 N.W.2d 638; State v. Shipley, 259 Iowa 952, 146 N.W.2d 266; State v. Alford, Iowa, 151 N.W.2d 573. Incidentally all of these decisions were handed down subsequent to the trial of this case and therefore were not available to the trial judge here.

■ The objection to this type of instruction, of course, is that it tells the jury again with reference to the defendant what has already been told them once with reference to all witnesses. It singles out the defendant who elects to testify and cautions the jury that such testimony should be subjected to special scrutiny. Prior to the decision in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, this court had consistently held in a long line of cases that it was not reversible error to give such an instruction. These authorities are set out and discussed in State v. Ford, supra. However, Griffin v. State of California, supra, holding that comment on a defendant's failure to testify violates the protection accorded him under Amendment 5 of the Constitution of the United States, has initiated new attacks on the type of instruction set out above. In other words if

the defendant's failure to take the·stand may not be called to the attention of the jury, is it permissible, when he does testify, to call this fact to the attention of the jury by special instruction? We have not been able to reach unanimity on this matter, but we have three times held since the Griffin case, each time with increased reluctance, that such an instruction is not grounds for reversal. In State v. Alford, supra, we suggest it would be advisable to omit such instruction. We repeat that admonition.

We hold defendant is not entitled to a new trial on the ground urged in this division.

IV. Finally defendant claims he was denied a fair trial because the county attorney was permitted to ask him about prior felony convictions as part of his cross-examination. After objections to such questions had been overruled, defendant admitted he had twice been convicted of a felony. Defendant claims this violated his constitutional rights under Amendment 5 and Amendment 14, Constitution of the United States.

 When a defendant voluntarily testifies in his own behalf, he submits himself to cross-examination as an ordinary witness with the restriction that cross-examination shall be confined strictly to matters testified to on direct examination. Section 781.13, Code of Iowa.

Section 622.17, Code of Iowa, provides:

"Previous conviction. A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof."

 We have recently held this section to apply to any witness, including the defendant in a criminal case. Gaskill v. Gahman, 255 Iowa 891, 896, 124 N.W.2d 533. When defendant elected to testify, his credibility as a witness became important. He cannot escape cross-examination to test that credibility. State v. Haffa, 246 Iowa 1275, 1283, 71 N.W.2d 35, 40. A previous felony conviction may be shown only to impeach the witness and for no other purpose. State v. Underwood, 248 Iowa 443, 80 N.W.2d 730; State v. Frink, 255 Iowa 59, 68, 120 N.W.2d 432, 438; State v. Van Voltenburg, 260 Iowa 200, 147 N.W.2d 869, 874, 875.

Defendant claims Lane v. Warden, Maryland Penitentiary, 4 Cir., 320 F.2d 179, supports his view. On the contrary we find that case furnishes additional authority for the State's position here.

 In State v. Hardesty, Iowa, 153 N.W.2d 464, we expressed some misgivings, both in the opinion of the court and in a specially concurring opinion, about the future of such an instruction in its conflict, real or fancied, with Amendment 14 of the Constitution of the United States. Those misgivings have not yet been resolved, but we adhere to our firmly established rule that such cross-examination is permissible.

The trial court properly instructed the jury to consider the testimony concerning his previous felony convictions for the purpose of impeachment only. We hold it was admissible for this purpose and we approve the trial court's ruling.

We have carefully reviewed the whole record and have considered all matters raised by defendant. We find no reversible error. The judgment of the trial court is therefore affirmed.

Affirmed.

All Justices concur except RAWLINGS and BECKER, JJ., who dissent.

RAWLINGS, Justice (dissenting).

Being unable to agree with conclusions set forth in Division III of the majority opinion, I respectfully dissent. See dissent in State v. Ford, 259 Iowa 744, 145 N.W.2d 638, 644.

BECKER, J., joins in this dissent.