ALBERT MAHER, Petitioner, v. GROVER W. BROWN, Judge of District Court of Fremont County, Respondent.

No. 44441.

JUNE 21, 1938.

Thornell, Thornell & Nichols and James Howard, for petitioner.

John H. Mitchell, Attorney General, Charles W. Wilson, Asst. Attorney General, and Harold L. Martin, County Attorney, for respondent.

MITCHELL, J.—This is an action in certiorari to review the action of the respondent, Grover W. Brown, Judge of the District Court of Fremont County, Iowa, in refusing to sustain the motion to dismiss in the case of State v. Maher pending in that county, made upon the part of the defendant, the petitioner herein.

Albert Maher had been indicted at the September 1937 term of the District Court of Fremont County, Iowa, commencing on September 28, 1937, at Sidney, Iowa. The next succeeding term was the November 1937 term, commencing on the 16th day of November of that year. The following term commenced on February 1, 1938, and at that term the motion to dismiss was filed on the grounds, (1) that two terms of court had elapsed in which the defendant could have been tried, and (2) that the trial was not postponed on the application of the defendant, and the indictment was triable at both the September and November 1937 terms of court and nothing was done with the case until the February 1938 term, which was the third term.

The main facts are not in dispute. The grand jury of Fremont County on the 8th day of October, 1937, returned a true bill, which was presented in open court, in the presence of the grand jury, by their foreman, charging Albert Maher with the crime of operating a motor vehicle while intoxicated. He was admitted to bail in the sum of $500, but no bond for appearance was filed.

On the 5th day of October, 1937, a date prior to the finding of the indictment but subsequent to the commencement of the September 1937 term of the district court, Albert Maher was committed by the Commissioner of Insanity of Fremont County, Iowa, to the State Hospital for the Insane at Clarinda as an inebriate. His confinement in the State Hospital continued until the 4th day of December, 1937, when he was paroled for a period of one year in the care and custody of one Martha Maher.

On the 2d day of February, 1938, being the second day of the regular February 1938 term of the district court, Albert Maher appeared by his attorneys for arraignment. He waived

reading of the indictment and time to plead, and pleaded not guilty.

On the next day, the 3d of February, 1938, petitioner's motion to dismiss the indictment came on for hearing before the presiding judge, the Honorable Grover W. Brown, respondent herein, and, after stipulation by counsel for both parties concerning the fact of the petitioner's commitment as an inebriate to the State Hospital at Clarinda and his parole therefrom on the 4th day of December, 1937, and after the taking of certain testimony and the argument of counsel, the court overruled the motion to dismiss. Thereupon Maher filed his petition for a writ of certiorari in this court.

Section 14024 of the 1935 Code of Iowa is as follows:

"14024. Delay in trial. If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next regular term of the court in which the indictment is triable after the same is found, the court must order it to be dismissed, unless good cause to the contrary be shown."

It is the contention of the petitioner that confinement in the State Hospital at Clarinda is not good cause for delaying trial, within the provisions of the above quoted statute. In the prior decisions of this court the determination of whether good cause to the contrary has been shown rests largely in the discretion of the trial court. In Davison v. Garfield, 219 Iowa 1258, 257 N. W. 432, 260 N. W. 667, this court, speaking thru Justice Claussen, stated at page 1262, 257 N. W., at page 434:

"The question is whether, on the question of dismissing the indictment, 'good cause to the contrary' has been shown, and sufficient reason for delay in trial has been established. The determination of the problem rests largely in the discretion of the trial court. Each case must stand on its own facts."

In the case of State v. Rowley, 198 Iowa 613, at page 616, 198 N. W. 37, at page 39, 199 N. W. 369, we find the following:

"We must assume that the trial judge, in continuing criminal causes at the end of any term, must have had these facts and the condition of the docket in mind when the continuance under a general order was entered. Nor do we think it

344

was necessary that the record should disclose the specific reason or reasons why criminal causes were continued upon the termination of any term of court. It is reasonable to presume that they were continued because the time fixed for the term had closed. State v. 'Enke, 85 Iowa 35, 51 N. W. 1146. The trial judge must exercise a wide and wise discretion in such matters, and the administration of criminal law does not require the impossible to be done. See State v. Arthur, 21 Iowa 322.''

And in the very recent case of Ferguson v. Bechly, 224 Iowa 1049, 277 N. W. 755, this court again cited with approval the above cases.

Therefore, in determining whether or not the respondent in this case abused the discretion that was his, depends entirely upon the record in the case.

Albert Maher was committed to the State Hospital for his own benefit. It was essential that the treatment be continuous and in order to secure that it was necessary that he be confined in the hospital under such commitment until the 5th day of December, 1937.

█ An inebriate is defined as being a ''drunkard, especially an habitual drunkard.'' Funk and Wagnalls New Standard Dictionary. Inebriacy is defined as ''the state or habit of being inebriated; drunkenness, especially habitual intoxication.'' Webster's New International Dictionary. The statutory provisions attending the commitment, custody, treatment and maintenance of inebriates are to be found in chapter 173, Code of Iowa of 1935.

Section 3478 of said chapter provides that:

''Commitment. Persons addicted to the excessive use of intoxicating liquors * * * may be committed by the commissioners of insanity of each county to such institutions as the board of control may designate.''

Section 3479 provides:

''Statutes applicable. All statutes governing the commitment, custody, treatment, and maintenance of the insane shall, so far as applicable, govern the commitment, custody, treatment, and maintenance of those addicted to the excessive use of * * * intoxicating liquors.''

Of the applicable statutes pertaining to the insane there is section 3509, which provides as follows:

"Patient accused of crime. When an inmate of any state hospital who was committed to such hospital at a time when he was formally accused of crime in any county of the state, regains his reason, the superintendent shall thereupon issue his warrant for the return of such person to the jail of the county in which such charge is pending and notify the sheriff of such county accordingly who shall proceed to such hospital and execute such warrant."

 Albert Maher having been committed to a State hospital, was subject to the exclusive jurisdiction of the board of control of state institutions. He was committed to the State hospital for treatment, and until he was cured of the disability from which he was suffering the criminal court would have no right to force him to stand trial. No man charged with a crime should be brought to trial until he is mentally and physically able to present himself in court. An inebriate is not in the mental condition that is necessary in order properly to present his defense in court, and until he is cured and released from the hospital (and the superintendent of the hospital is to determine when he is cured) the criminal court would have no right to force him to trial.

In the case of Quaintance v. Lamb, 185 Iowa 237, at pages 240, 241, 170 N. W. 398, we read:

" * * *the question for determination is whether the accused shall be detained in the Hospital for Insane, under and by virtue of the order of the commissioners of insanity, until found by the superintendent of the Hospital for the Insane to be cured, or be tried, as ordered by the district court. The proceedings resulting in the order of the commissioners of insanity were in pursuance of Sections 2279 of the Code, which provides that:

" 'On a written application made by any citizen, stating under oath that a person confined in any prison within the county, charged with a crime but not convicted thereof nor on trial therefor, is insane, the commissioners shall cause said prisoner to be brought before them, and if they find that he is insane they shall direct his removal to and detention in one of the hospitals for the insane, issuing their warrant therefor, and stating therein that he is under criminal charges, and the superintendent of the hospital designated in such warrant shall re-

ceive and keep such prisoner as a patient. The warrant shall be executed by the sheriff or his deputy by delivering the prisoner to the superintendent in person. After an investigation such as contemplated in this section, the commissioners shall not entertain a like application within six months on behalf of said person.'

"The situation of petitioner was, in all respects, as described in this statute: i. e., confined in prison, charged with crime, and neither convicted nor tried. The commissioners of insanity, then, did not exceed their authority, if it can be said to have existed as against the power of the district court to proceed with the trial upon indictment returned in such a case. The section following, however (Code Section 2280), defines when the accused shall be returned from the hospital:

" 'When any insane person shall be confined in either hospital under the preceding section, the superintendent in whose charge he may be shall, as soon as such person is restored to reason, issue his warrant to the sheriff of the county from which such person is received, directing him to return such person to the jail of said county, which shall be done by said sheriff as soon as practicable, when the accused shall be returned to the jail of the proper county to answer to the charge against him.'

"This plainly contemplates that the prisoner shall be treated at the Hospital for the Insane until restored to reason. He could not be put on trial before. The superintendent of the hospital is to determine when he is cured, and issue his warrant accordingly. There seems to be no escape from the conclusion that, under these statutes, the accused should have been taken to the Hospital for the Insane, and there retained as a prisoner and treated as a patient until the superintendent found his reason restored, and issued a warrant for his return to the jail of the county, after which he would be subject to being put on trial."

Clearly, then, Albert Maher could not be put on trial until he was released from the hospital at Clarinda.

However, petitioner contends that even if confinement to the hospital is good cause, he was free and subject to trial during the November 1937 term, so that such confinement was not good cause at the November 1937 term. This record shows without any dispute that Maher was not released until three

weeks after the November term had started. We quote from the finding of the court on the motion to dismiss:

" * * * The court also finds that the next term of court following the September Term, 1937, of the district court of Fremont County, Iowa, commenced on November 16, 1937, and that the active part of that term ended within three weeks, and the presiding judge (the respondent) was required to open court the next week at Glenwood, Iowa, according to the assignment of judges of the terms of court of the said Fifteenth Judicial District of Iowa. The court further finds that the defendant, Albert Maher, continued in the Hospital for the Insane as an inebriate until December 5, 1937. That this was after the three-week period had ended of the November, 1937, Term of this said court, * * *."

It is true that the November term of court did not end until the first day of February, 1938; that it was the custom in that district as it is in a great many, to keep the term open as long as possible so that orders of court might be secured. However, it appears without any dispute, that the first three weeks were the active weeks and that the presiding judge under the assignment was required to open court the week following at Glenwood; that there was no judge present or presiding. The only possible way that the petitioner could have been tried at the regular November 1937 term would have been by the appointment of a special judge and reconvening of the petit jury. Certainly no such burden was cast upon the state in its role as prosecutor.

As was said by this court in State v. Rowley, 198 Iowa 613, 616, 198 N. W. 37, 39, 199 N. W. 369:

" * * * the administration of criminal law does not require the impossible to be done."

It thus appears that the trial court, respondent herein, exercised a sound discretion in determining that good cause existed for want of prosecution of the petitioner at the November 1937 term, and it necessarily follows that the writ of certiorari must be, and it is hereby, annulled.—Writ annulled.

Chief Justice and all Justices concur.