**STATE of Iowa, Appellee,**

**v.**

**Patsy Ann NELSON, a/k/a Patsy Ann Moriarty, Appellant.**

**No. 56825.**

Supreme Court of Iowa.

Oct. 16, 1974.

446

Hall, Ewalt & Hall, Indianola, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Robert A. Gottschald, Co. Atty., for appellee.

Heard before MOORE, C. J. and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

LeGRAND, Justice.

Although several issues are raised on this appeal, we consider only defendant's assertion the case should have been dismissed for the State's failure to file an information against her within 30 days from the date she was held to answer to the charge of operating a motor vehicle while under the influence of an alcoholic beverage. See § 795.1, The Code. We hold defendant's position is well taken. We reverse the judgment and remand the case to the trial court with instructions to enter an order dismissing the county attorney's information.

Before reaching the precise question before us, we review the background events leading to the present controversy. Until April 25, 1973, we had interpreted § 795.1 (relating to speedy indictment) and § 795.2 (relating to speedy trial) to mean the 30-day period allowed in § 795.1 and the 60-day period allowed in § 795.2 were waived by failure of a defendant, when represented by counsel and out on bail, to demand one or the other. Put differently, we had held a demand was necessary to start the running of those periods.

On April 25, 1973, we handed down State v. Gorham, 206 N.W.2d 908 (Iowa 1973), a case dealing with speedy trial under § 795.2. There we modified our previous rule by holding failure to demand speedy trial,

while a factor to be considered, does not alone toll the running of the time period in § 795.2. We did so to conform to Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Our new position is fully explained in *Gorham* and need not be discussed here. Since that case dealt only with a speedy trial demand under § 795.2, it did not necessarily settle any questions arising under the companion statute (§ 795.1) concerning the right to a speedy trial indictment. Nevertheless, it was clear the same reasons which impelled *Gorham* applied equally to § 795.1 cases. We recognized this in State v. Morningstar, 207 N.W.2d 772 (Iowa 1973), decided one month after *Gorham*. *Morningstar*, although the result there turned on other grounds, contained this significant statement at page 775:

"Since § 795.1 is inapplicable, we need not consider defendant's attack upon our former rule that a person who is held to answer must demand speedy trial or he waives the benefit of that section. However, were § 795.1 applicable, failure to make a demand would not have prevented operation of that section, for we have recently eliminated demand as a prerequisite to operation of the section. State v. Gorham, 206 N.W.2d 908 (Iowa)."

■ Now the issue of whether *Gorham's* rationale applies also to cases arising under § 795.1 is squarely presented. From what we have already said, our answer to that question is easily predictable. The *Gorham* rule is the standard for cases arising under § 795.1 as well as for those under § 795.2.

■ One other preliminary matter should be discussed. *Gorham* was not retroactive. It was made applicable only to certain classes of cases, one of which was those in which an indictment or information was filed after April 25, 1973. We hold today's decision is effective as of that same date with one modification made necessary by the different purposes as which §§ 795.1 and 795.2 serve. In *Gorham* we said the rule would apply to "cases in which an indictment is returned or a county attor-

ney's information is filed after the filing of this [*Gorham*] opinion." The critical time under § 795.1 is not the date an indictment or information is filed but the date upon which a defendant "is held to answer." The instant case, therefore, applies to all charges to which one was held to answer after the date of the *Gorham* opinion.

With this in mind, we consider the facts upon which this appeal rests. Defendant was arrested on July 17, 1973, and charged with operating a motor vehicle while under the influence of an alcoholic beverage. § 321.281, The Code. On July 18, she was taken before a magistrate, where she waived preliminary hearing, and was bound over to the grand jury. At that time she was held to answer under § 795.1. State v. Morningstar, supra, 207 N.W.2d at 775. Since this was some three months after the *Gorham* opinion, defendant is entitled to the benefit of that decision. The case then remained dormant for 36 days, when a county attorney's information was filed. Defendant promptly filed her motion seeking a dismissal of the charge against her for the State's failure to observe the provisions of § 795.1. After a hearing, the motion was overruled.

The pertinent provision of the statute in question contains the following:

"When a person is held to answer for a public offense, if an indictment be not found against him within thirty days, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown. * * * "

■ While it is perhaps unnecessary to do so, we point out that the reference in the statute to the filing of an indictment includes also cases prosecuted on county attorney's information. See § 769.13, The Code, 1973; State v. Morningstar, supra, 207 N.W.2d at 774; State v. Williams, 193 N.W.2d 529, 530 (Iowa 1972).

The trial court correctly found defendant was entitled to the benefit of the provisions of § 795.1. However, the court further held

the State had shown good cause to the contrary. We cannot agree and hold the case must be reversed. We do not overlook the rule that whether good cause exists or not is a matter which lies largely in the trial court's discretion. Davison v. Garfield, 219 Iowa 1258, 1262, 257 N.W. 432, 434, 260 N.W. 667 (1934) (modified on other grounds); Maher v. Brown, 225 Iowa 341, 343–344, 280 N.W. 553, 554 (1938) and citations. However, under the circumstances now before us, we hold there was no basis upon which the trial court could find it existed and we must therefore reverse.

Defendant was arrested, booked and charged in the name of Patsy Ann Nelson. During a previous marriage her name was Moriarty; and, when arrested, her driver's license was still in that name. Defendant submitted to a blood test and the analysis of the blood sample was returned by the laboratory in the name of Patsy Ann Moriarty. However, she still stood charged in the name of Patsy Ann Nelson.

With this preface, we set out the county attorney's statement to the trial court at the hearing on the motion to dismiss, which was the only showing of good cause offered by the State:

"Your Honor, on behalf of the State we would resist that motion [to dismiss] and show to the court that we do have good cause for this charge not being filed within 30 days. When Patsy Ann Nelson or Patsy Ann Moriarty was booked at the police station she was booked under the name of Patsy Ann Nelson and she did submit to a blood alcohol test, and while I was waiting for that report to come back there was a report that was returned to my office from the BCI lab giving the name of Patsy Ann Moriarty and also after that name, perhaps through some mistake, had marked [a 'V'] after her name, which would indicate a victim. The usual procedure in the lab is that if it is a death they will mark [a 'V'] after the name. If there is an 'S' after the name that stands for suspect and that would mean that was an active case.

"When I received this blood test on a Patsy Ann Moriarty with ['V'] after it I myself did not make the association between the blood alcohol test of Patsy Ann Nelson and Patsy Ann Moriarty in this particular case, and essentially since it had the ['V'] marked after it, I was led to believe by the lab report that this had been a death that had occurred in Warren County and did not make the connection. As soon as I realized that Patsy Ann Moriarty and Patsy Ann Nelson were one and the same, I charged her immediately with the information.

"In this particular case, Your Honor, it is just simply a mistake on my part that I didn't make the association between Patsy Ann Nelson and Patsy Ann Moriarty when this lab report came back from the Iowa Criminalistics Laboratory. I think it hasn't been an undue hardship on the defendant, as stated in the defendant's motion. This is a matter of 36 days that had gone by before she was indicted and merely 39 days since she was brought to arraignment. In this particular case only six days had gone by, Your Honor, prior to the defendant being indicted and charged in this particular case, and we feel we have good cause in this particular case, Your Honor, and would ask that the motion to dismiss in this particular case be overruled and that the defendant be arraigned on this charge of operating a motor vehicle while under the influence of an alcoholic beverage."

In overruling the motion to dismiss the trial court stated,

"The delay as it occurred was due primarily to the acts of this defendant herself, part of which actually constituted a violation of the Iowa driver's license laws in that she failed to notify the driver's license authorities of her change of name so that her driver's license could have been changed and she should have been operating a motor vehicle under the name of Nelson, which is her present legal name and was her legal name as of the

date of the arrest. This led to the fact that when the specimen of blood was sent in it was sent in under the name of Patsy Ann Nelson and then later was apparently picked up because of the driver's license under the name of Moriarty, and this created a circumstance which made, in the court's opinion, an excused situation so far as complying strictly with Code § 795.1."

■ This was error. We find no theory upon which the State can be said to have shown good cause, even giving its explanation the most favorable interpretation possible. As the county attorney candidly stated, the delay was simply due to a mistake on his part, which, while understandable, furnishes no grounds for excusing failure to comply with the statute.

We fail to see how the variation in names—Nelson and Moriarty—contributed to the delay or confused the State, particularly since the county attorney states he did not associate the report in the name of Moriarty with the defendant Nelson. Stripping away all irrelevancies about name variations and blood tests, we are faced with the simple fact the State knew this defendant was held to answer to the present charge on July 18 and that a county attorney's information should be filed within 30 days thereafter. The only excuse offered for not doing so is that the county attorney (not realizing he already had one under a wrong name) was waiting for the results of the blood test to which defendant had consented.

Is this "good cause" under the statute? We think not. There may be cases in which such circumstances contribute to a showing of good cause. They are not present here. There is no evidence the State made any inquiries about what must have been considered an unusual delay. There is no claim the charge was sustainable only with the test, which might justify a failure to file until the result was known. In fact at trial three witnesses testified unequivocally that defendant was under the influence of an alcoholic beverage or, as one put it, was drunk.

■ We refuse to approve the State's apparent position—that it may await the production of evidence beyond the statutory period set out in § 795.1 and use that delay as good cause for ignoring that statute. The State had the burden to establish good cause for failure to file a county attorney's information within 30 days from the date defendant was held to answer. State v. Bowers, 162 N.W.2d 484, 487 (Iowa 1968). It did not do so under this record.

In State v. Jennings, 195 N.W.2d 351, 354–356 (Iowa 1972) (a § 795.2 case), although holding good cause was there shown, we emphasized the importance and necessity for the State to afford one charged with a crime the speedy trial to which one is entitled under § 795.2. That is equally true of a defendant's corresponding, and independent, right to a quick indictment under § 795.1.

In State v. Bowers, supra, we dismissed a case because an indictment was not returned until 44 days after defendant had been held to answer. It is true no resistance was there offered by the State and no reason for the delay was given. However, that case illustrates the weakness in one of the State's arguments here—that the delay was only a "short one." In Bowers, it was 44 days, in the present case 36. Every limitation statute sets up an arbitrary date after which certain actions cannot be brought or certain rights cannot be enforced. One cannot escape the effect of such statutes by showing they were only violated a little bit. The statute prescribes the only way in which its impact may be avoided—by a showing of good cause. As we said in Bowers:

"It * * * is our duty to give full force and effect to the directive of section 795.1 even though it results * * * in the release of one found guilty of a serious offense [assault with intent to commit murder] by a jury." (162 N.W.2d at 487).

We believe the record in this case shows the following facts without dispute:

(1) Patsy Ann Nelson was held to answer to the charge of violating § 321.281, The Code, on July 18, 1973;

(2) A county attorney's information was filed against her on August 24, 1973, 36 days after that date;

(3) The county attorney at all times knew this defendant stood charged with the crime of operating a motor vehicle while under the influence of an intoxicating beverage;

(4) The county attorney's mistaken belief that the report of defendant's blood analysis was not available within 30 days from the date she was held to answer does not constitute good cause for failing to file an information within the statutory period set up in § 795.1, nor would it alone be good cause even if true.

We hold the State did not show good cause for failing to observe the provisions of the statute in question. The ruling of the trial court is reversed, and this case is remanded to the district court for dismissal of the prosecution.

Reversed and remanded with instructions.